Burpee *v.* Parker et al.

---

EMORY BURPEE *v.* PLINY PARKER, BENJAMIN BILLINGS, AND DARIUS L. GREEN.

[IN CHANCERY.]

*Mortgage. Foreclosure.*

A mortgagee may legally hold two mortgages, on different pieces of land, for the security of the same debt, and may foreclose his mortgage on one piece, without the other; and whether a foreclosure on one, will bar a foreclosure on the other, depends upon the value of the premises foreclosed.

If the land foreclosed is equal in value to the debt, the debt is thereby paid, and the remaining premises are relieved from any further claim as security.

APPEAL from the Court of Chancery.

The orator filed his bill to foreclose a mortgage on certain premises in Ludlow, executed to the orator by the defendant Parker, December 7, 1841. The condition to the mortgage was as follows:

Burpee *v.* Parker et al.

" The condition of this deed is such, that if the above named " Pliny Parker and one Benjamin Billings, shall well, truly, and "faithfully release, indemnify, and save harmless, the said Emory " Burpee from all suits, damages, and costs, that may arise by rea- "son of the said Burpee's having signed any note, draft, or order, " for the benefit of said Parker & Billings, or by reason of the " said Burpee's hereafter signing any note, draft, or order, for their " benefit, then this deed to be void otherwise of force."

The orator alledged in his bill, that he had signed various notes to various persons, for the benefit of said Parker & Billings, and had paid the same, among which was a note to Black River Bank, a note to Isaac P. Strow, and two notes to Martin Perry.

The defendants admitted by their answers, that the note given to the bank was for their benefit, and was secured by the mortgage ; that the note given to Strow was for their benefit, but insisted it was not secured by the mortgage, or intended to be so secured, for that the said Parker executed a deed to the orator, of a lot of land, called the David Sargent lot, to secure him for signing said Strow note, and that the defendants had no knowledge of the other notes, and that no part of the money obtained thereon, ever came to their use.

The orator traversed the answers, and testimony was taken, from which it appeared, that Parker & Billings rented a factory belonging to the orator, and were considerably in arrear for the rent ; and, that April 1st, 1846, they executed a note to the orator of $1,082.60, for the rent, and that no part of the money obtained on said notes, was applied to the extinguishment of the orator's claim ; that said Strow note was secured by a deed of said Sargent lot, and that the defendant Billings was present when said notes were executed to Perry, and said they were for the benefit of Parker & Billings. It also appeared, that the orator had the money obtained on said notes to Perry, and the reason why he thus obtained it, was because said Parker & Billings neglected to pay said rent.

The only interest the other defendant, Green, had in the transaction, was, as mortgagee of the premises, subsequent to the orator.

The chancellor decided, that the bank note and the Strow note were secured by the mortgage, and the other notes were not ; from which the orator appealed.

*Washburn & Marsh* for the orator.

It is conceded that the bank note was given for the benefit of Parker & Billings, and that they had the money thereon realized, and that the orator paid it before the commencement of this suit.

It is also admitted in the answers, that the money realized on the Strow note was received by Parker & Billings, and it is proved that the orator paid it.

The mortgage *in-terms*, applies to this very note.

As to the notes given by the orator for money borrowed, and signed by him alone, the orator claims they were executed solely for the benefit of Parker & Billings, and at their request, and upon their promise to pay them when they become due, and that he has been compelled to pay them; and that, therefore, he has a valid claim under the mortgage, to recover the money so paid by him, to the extent of the indebtedness of Parker & Billings to him, ($1,082.60.)

When the orator received the money borrowed by him, it was as payment of so much of the debt of Parker & Billings to him, if they met the notes so given for the money. And so far as the mortgage security is concerned, it was in fact payment, creating a claim for indemnity under the mortgage, if he was compelled to repay. *McDaniel* v. *Colvin et al.*, 16 Vt. 300.

*S. Fullam* for defendants.

The defendants insist that the note to Strow was not secured by this mortgage.

1. Because it was given prior to this mortgage, and was not intended to be secured by it.

2. It was amply secured by a deed of the Sargent lot.

The orator should have included the Sargent lot in his bill, so that it might be redeemed.

This mortgage only secures the bank note. The other notes described in the bill, were given for the orator's benefit, were not reckoned in the settlement, and in no way benefitted the defendants.

The obvious and palpable meaning of the mortgage is, to secure the orator for undersigning for Parker & Billings, and if the rent of the factory was intended to be secured, it would have been named.

xxiv.    37

Billings should be discharged with his costs.   He had no inter-
est in the premises, and never had, he therefore had no interest to
redeem.

Billings admissions are not evidence against the other defend-
ants,— he has no interest in the controversy, and his admissions
should not affect those who have.

The opinion of the court was delivered by

Isham, J.   The condition of the mortgage deed described in
the orator's bill, is evidently sufficiently broad and general in its
provisions to embrace the note given to Isaac T. Strow, in Feb-
ruary, 1845.   This note, it appears, was given in substitution of
the note executed by the same parties to Archibald McEwing, in
November, 1839.

The circumstance that the David Sargent lot was conveyed by
Parker to the complainant, as security for signing the original note
to McEwing, and that he still retains the same for that purpose,
does not affect the right of the complainant under this mortgage,
as both tracts of land may be held under different instruments, as
security for the same debt, and whether a foreclosure of one will
bar a foreclosure on the other, depends upon the value of the prem-
ises foreclosed.   If the land foreclosed is equal in value to the
debt, the debt is thereby paid, and the remaining premises are re-
lieved from any further claim as security.   3 Mass. Rep. 562.   3
Mason's Rep. 474.   8 Pick. Rep. 336.   11 Wend. Rep. 106.   2
Greenl. Evid. § 524.

It was not necessary to include the Sargent lot in the bill, as the
complainant is at liberty to proceed against the premises described
in the last mortgage only, and on payment of the debt, the mort-
gagor has his remedy by a bill in his own name, for a reconvey-
ance, or a decree to that effect could have been made in this suit,
if a cross bill had been filed for that purpose.

The claim on the note to the Black River Bank, is not objected
to by counsel, and is consequently allowed on this mortgage.   Both
of these claims, being numbers 13 and 14 in the schedule, were
allowed by the chancellor, but for the rejection of other claims
made by the complainant, he has taken this appeal.   It is evident,
from the general language of the condition in the mortgage deed,
that the object of this mortgage was, to secure the complainant in

giving them the use of his name and credit from time to time, as their necessities required, in raising money for the prosecution of their business. And when we give effect to the mortgage in securing future claims, it is equally evident that the testimony should as clearly bring them within the conditions of the deed, as would be required on those claims existing previous to the execution of the mortgage. Where the notes so given were signed by Parker & Billings, and undersigned by the complainant, the case is free from difficulty, for the note carries on its face evidence of their request for his signature, and that the benefit derived, was of that character contemplated by the parties in the execution of the mortgage. Where the complainant has not undersigned their names, but has given his individual note for money borrowed, more difficulty arises, as the note furnishes no evidence of its having been given at their request, or for their benefit, and those facts are supplied by testimony *aliunde*. If Parker & Billings had raised money on the individual note of the complainant, unquestionably the complainant would be secured under this mortgage, even if the money had been paid on the debt of the complainant. For in such case, *the acts* of Parker & Billings would supply the proof of request in giving the note, and show that the benefit derived from such payment, was of that character contemplated when the mortgage was executed.

Where, however, the complainant has executed his own note to other persons for borrowed money, and which he personally negotiated and received, we derive no such evidence from the face of the note, or from the acts of Parker & Billings, and such are the facts in relation to the various claims in the schedule, from number 2 to 11 inclusive, except the Martin Perry notes, numbered 7 and 8. In all these cases the complainant gave his own note, negotiated for the money, and received the amount, and has made no application of it on any debt of Parker & Billings. To make the payment of those notes by the complainant, a claim under that mortgage, it must appear that they were the notes of Parker & Billings to pay, and that they were under obligations to indemnify, or save harmless, the complainant for having given the same. This obligation would arise if the money had been paid into the hands of Parker & Billings, or if it had been applied by their mutual consent, on the note given, or claim for rent, and which is referred to by number 15 in the schedule.

The complainant insists that such is the case in relation to these notes. That the money was borrowed by their direction, and when received, it was as payment on the note given for rent. This is denied by the several answers of Parker & Billings. They admit their indebtedness on that note for rent, and that they had been called upon for payment, but state that they informed him of their inability to pay at that time; that he must raise the money he wanted elsewhere, as he was able to borrow and they were not, and they would let him have the money when necessary to repay it. This answer, though traversed, is responsive to the bill, so much so, as to require it to be overcome by competent and sufficient testimony to entitle the orator to a decree. If the facts stated in the answer are true, it is clear that Parker & Billings were under no obligations to pay these notes as their own; they were simply under obligations to furnish the means to the complainant, in payment of their note, to enable him to pay the money borrowed, and the payments, when so made, would no more constitute a claim under this mortgage, than the note itself given for the rent.

In examining the testimony of the several witnesses that have been introduced by the orator, in which they have related the substance of several conversations between the orator and the defendant Billings, it is proper to observe, that whilst its tendency is to show the main facts, as claimed by the orator, yet the testimony is not greatly inconsistent with the case, as stated by the defendants in their answers, when Billings stated, (as testified by Mr. Benton and others,) that they had frequently told the orator *to borrow money*, and that they would *meet*, or *pay it;* it is not the exercise of great latitude in the construction of testimony, *to indulge the idea* that reference may have been had, to *their promise* to pay a sufficient amount on their note to the orator, to enable him to pay those notes, and in *that way to pay or meet* the claims.

It may be as reasonable so to weigh the testimony, as to regard those and similar expressions, as a full recognition of those notes as their own, and against which they were bound to indemnify the orator. But wherever may be the balance of testimony, as it stands connected with the witnesses introduced, there are other circumstances in the case that do, and should, exert a controlling influence upon the question in relation to these particular notes. The claim of the orator for rent, had been accruing for the period

Burpee *v.* Parker et al.

of seven years, and was finally adjusted, and a note given for the balance in the spring of 1846. By reference to the schedule, it will be perceived that all these notes were given, and the money received thereon by the orator, previous to that settlement, and that the money was borrowed in consequence of his inability to obtain payment of his rent. And yet, in that settlement for rent, no statement is made by the orator of the money borrowed, no credit given, and no deduction from the amount due for rent, made on account of it, but a note was taken in that settlement for the rent due. If the orator intended to make those notes the debts of Parker & Billings, and place them under an obligation to save him harmless from the payment of them, it was his duty to have then applied the money received on the notes, on the rent, and have taken their note only for the balance, or by mutual consent have indorsed that amount on the note. The money would then have been applied for the benefit of Parker & Billings, and the notes would have been theirs to pay. But the neglect of the orator so to apply the money, or account for the same, was a direct repudiation of their right to treat the same as payment on that claim. He has treated the notes and the money received thereon as his own, and with which Parker & Billings had no concern; it is evident, also, Parker & Billings so considered it, for they were directly interested to insist upon the application of that money on the rent, if the money had been borrowed on their account. And if the notes were for them to pay, it is not reasonable to suppose that they would have given their note for the amount of rent due, if they were entitled to have that application made, and leave unaccounted for in any place the money so raised. It is true Parker & Billings were benefitted in the orator's borrowing this money for his use, and in his not insisting upon immediate payment of the note against them, as they were to that extent permitted to retain their actual capital in the prosecution of their business. But it was that benefit only which every debtor derives from an extension of credit on his debts.

They were equally benefitted when the note for rent was given, as the orator might then have insisted upon immediate payment of that amount, and extracted so much from their actual capital employed; but by giving this note, they were permitted to retain it in their business, yet no one has considered that note as secured

by this mortgage. In relation to those claims, therefore, we think they were properly disallowed by the chancellor. The same considerations apply in relation to the note given to the Bellows Falls Bank, being number 12 in the schedule. The note, also, purports on its face to have been given by the orator as principal, as he was the first signer. The defendants Parker & Billings, state, that they signed the note as sureties, and the testimony, particularly of Charles Burpee, is far from overcoming the answer, and the evidence arising from the face of the note, in showing this to be the note of Parker & Billings to pay.

In relation to the notes given to Martin Perry, being numbers 7 and 8 in the schedule, though given before the settlement in the spring of 1846, yet, it would appear from the testimony of Mr. Perry, that the money was not received by the orator, and had no connection with their indebtedness for rent, but on the contrary, the first note was borrowed for Parker & Billings, to enable them to pay a bank note. There was not, therefore, the same reason for accounting for the money on the settlement for rent, that existed in relation to the other notes, where the money was received and retained by him. Perry testifies distinctly, that Billings was present when the money was borrowed in the one case and paid in the other, and not only from their declarations in conversation, but from the conduct and interest which Billings took in the transaction, he was informed and received the impression, that the money was obtained for them, and had been appropriated for their benefit.

We are, therefore, inclined to the opinion, that these two notes should be added to those allowed by the chancellor, under this mortgage.

The result is, that the decree of the chancellor must be reversed, and the case remanded for the purpose of adding those two notes, and including them in a decree for the orator.