## Case No. 16,303.

### UNITED STATES v. SIXTEEN PACKAGES.

[2 Mason, 48.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1819.

CUSTOMS DUTIES—FORFEITURES FOR UNDERVALUATION—"ACTUAL COST."

The 66th section of the revenue act of 1799, c. 128 [1 Story's Laws, 631; 1 Stat. 677, c. 22], by the terms "actual cost," means the true and real price paid for the goods in case of a bona fide sale, and the forfeiture is not inflicted by that section, when the goods are invoiced according to such price, on a real bona fide sale, although the purchase be below the ordinary market price. But the terms "actual cost" do not apply to the case of a voluntary gift or conveyance, where the substantial consideration is not money, or its equivalent estimated at a money price. Nor do they apply to a case where the consideration is partly money and part y love and affection.

[Cited in Alfonso v. U. S., Case No. 188; Carroll v. The Leathers, Id. 2,455.]

[Error to the district court of the United States for the district of Massachusetts.]

Information on the 66th section of the collection act of 1799, c. 128 [1 Story's Laws, 631; 1 Stat. 677, c. 22], for a forfeiture of the goods in question. Upon the issues joined in the district court, the jury found a verdict for the claimant, on which judgment was rendered in that court. [Case unreported.] .A bill of exceptions was taken to the charge of the judge, and the present writ of error was brought to reverse that judgment.

The facts of the case were as follows: In the month of August, 1817, the merchandise in question was duly entered at the custom house in Boston, by Messrs. Whitwell, Bond

1 [Reported by William P. Mason, Esq.]

and Company, on behalf of Thomas Winterbottam, a British subject, to whom the said merchandise belonged at the time of its importation into the United States. At the time of the entry of the said merchandise, an invoice of the same, bearing date at Huddersfield, in England, July 5th, 1817, was exhibited to the collector, by the said Whitwell, Bond and Company, as the true and original invoice, by which it appeared that the actual cost of the said merchandise, after a deduction of certain allowances therein specified as having been made to the said Thomas Winterbottam, was the sum of £2,293 7s. and no more. The said Thomas Winterbottam was the son of Benjamin Winterbottam, an extensive cloth manufacturer of Huddersfield, in England, and it appeared that he had purchased these goods of his father, sometime in June, 1817. These goods were appraised by order of the collector, and in conformity with the provisions of the 66th and 67th sections of the act of congress, of March 2, 1799, regulating the collection of duties, in consequence of the collector's suspicions that they were not invoiced at their true value. Upon this appraisement the value of said merchandise was estimated at £2,830 2s. 8d. sterling, after a deduction of all such charges thereon as in the opinion of the appraisers ought to have been deducted. The testimony of respectable merchants residing in Boston, who were importers and extensive dealers in cloths of every description manufactured in England, was produced, showing that the prices of some of the cloths, as estimated in the said invoice, were from twelve and a half to twenty-five per cent. lower than cloths of the same description and quality purchased by them, at about the same time, although they purchased under great advantages; and that the cloths in the said invoice were estimated at a lower rate than the market price at that time, and in that country. It was also testified by the same witnesses that the allowance of five per cent. for measures on some of the articles as mentioned in the said invoice, or any allowance whatever for measure on articles of that description was a circumstance which they had never before heard of, and was altogether unusual. It was also given in evidence, on the part of the United States, that the customary allowance at the manufactories in England, for prompt pay, on the purchase of goods of the description here alluded to, was at the time of this purchase, from five to seven and a half per cent. And none of the witnesses had ever known an instance of so large a discount as ten per cent.

The deposition of Benjamin Winterbottam, the father of the importer, was produced, stating that the said Benjamin, being a manufacturer of cloths residing at Saddleworth, sold to his son, the claimant. the goods mentioned in the said invoice, in the month of

June, 1817, and that the prices stated in the said invoice thereof, before mentioned, were the fair and true prices at which the goods were sold by him, and that the several discounts therein stated to have been made by the deponent were correct and true, and that the prices at which he sold the goods in question were higher than he could have obtained for them at that time in any market in England. It was also stated in the deposition of one John Kilner, a woollen merchant of the said Huddersfield, that he was called upon by the claimant and his father to make out the said invoice of goods for·a foreign market, that he did make out the same, and at the time he so made it, he was of·opinion that the prices of·some of the goods were charged too high, and that he then so stated his opinion. The district judge charged the jury, that by the words actual cost and real cost, as they are employed in the first paragraphs of the 66th section of the act of congress before mentioned, was to be understood merely the price or sum of money which should appear to have been actually paid by the importer for the merchandise therein referred to at the place of exportation, and that though such price should be in any case at the place of exportation below the ordinary current value, still that the goods so purchased and so imported, could not be considered liable to the forfeiture provided in that section, in case it should appear, that the original invoice and entry at the custom house here were in conformity with the price thus actually paid by the purchaser, and the purchase was real and genuine. And the judge furthermore delivered his opinion to the jury, that in case a father, being a manufacturer of cloths in England, should make a sale of merchandise to his son, and being disposed to shew him some indulgence in the bargain, should fix the price of the goods so sold at a sum below their common and ordinary value, and the invoice thereof should be made out and delivered accordingly, and the son should afterwards bring such goods to the United States, and cause their entry with the collector to be made in conformity with such invoice without apprising the collector of the indulgence so given in the purchase, this circumstance alone would not subject such goods to forfeiture under the provisions of the 66th section of the act before mentioned: provided the jury should be of opinion that such sale was real and genuine, and that the deduction from the usual price was not for the purpose of giving an advantage in the estimation of duties. The said judge further gave it as his opinion to the jury, that if an importer of merchandise into the United States from a ·foreign port should happen to have purchased such merchandise at the place of exportation, at auction or otherwise, at a price below their ordinary value at such place, and receive his invoice accordingly, the entry of such merchandise with the collector of a port.in the United States, in conformity with such invoice, would not subject the merchandise to forfeiture, under the provisions of the section of the act above mentioned, unless from the great difference of price, or some other circumstance proved, the jury should infer an intent to evade the duties; and that in case they should be satisfied, from the evidence in the case, that the said Thomas Winterbottam did in reality purchase the goods in question of his father Benjamin, at the prices mentioned in the invoice; and if the jury should be of opinion that the sale was true and bona fide, although these prices might be below the rate at which the said Benjamin would have been willing to sell them to a third person, not thus connected with him, and also below the ordinary value at the place of exportation; yet, that the subsequent entry of said goods at the custom house in Boston, by the said Thomas, in conformity with said invoice, would not subject said goods to the forfeiture provided in the before mentioned section of the act of congress, unless the jury should believe, from the circumstances proved in the case, that there was a design to evade the duties on the goods.  ·

G. Blake, U. S. Dist. Atty.
Hubbard & Webster, for claimant.

STORY, Circuit Justice. It is unnecessary to give any opinion as to the exactness ·or regularity of the pleadings in this case, because the only errors relied on by the district attorney, are, if at all, to be found in the charge of the learned judge of the district court, as it stands in the bill of exceptions.

. The count in the information, which alone is material in the present inquiry, is founded on the 66th section of the revenue act of 1799, c. 128 [1 Story's Laws, 631; 1 Stat. 677, c. 22], which enacts "that if any goods, &c. of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, &c. or the value thereof, to be recovered of the person making the entry, shall be forfeited." The section then proceeds to provide for a valuation to be made of any goods, which the collector shall suspect not to be invoiced at a sum equal to that for which they have been usually sold in the place or country from which they were imported, according to which valuation the duties are ·to be paid or secured; with a proviso that such valuation shall not, in case of a prosecution for the forfeiture under the first clause, exclude at the trial other proof of the actual and real cost of the goods at the place of exportation.

The 36th section of the same act requires the owners and consignees of imported goods to make an entry thereof at the custom house, specifying, among other things, the prime cost and charges thereof; and at the same time to produce the original invoices of the same goods; and further to make oath that the entry contains a just and true account of the cost of the goods, including all charges, and that the invoices are true and genuine. The 61st section of the same act declares that the ad valorem rates of duties on imported goods shall be estimated by adding twenty per cent. to the actual cost, if imported from the Cape of Good Hope, or any place beyond the same; and by adding ten per cent. to the actual cost, if imported from any other place, including all charges; commissions, outside packages and insurance only excepted.

It is apparent that the terms "actual cost," "real cost," and "prime cost," used in these sections, are phrases of equivalent import, and mean the true and real price paid for the goods upon a genuine bona fide purchase. The language is wholly inapplicable to any case of a gift or voluntary conveyance, or where any thing but money, or its equivalent, mingles substantially in the consideration. In such cases there is no pretence to say that any specific price is paid as the whole estimated value or actual cost of the goods; and the sections apply, in terms only, to sales where there is a real invoice price charged and accounted for between the parties. For a like reason cases of barter of goods for goods, or goods for services, or goods for lands, where no specific value in money is fixed in the purchase, are without the purview of these sections, and are to be regulated by the other provisions of the act. But if in point of fact the sale be real and genuine, and the invoice exhibit what was the true and entire consideration, which passed between the parties on such sale, it is immaterial, so far as respects the forfeiture inflicted by the 66th section, whether the purchase be at a public or private sale, or whether the price fall below the ordinary current value or not. All that this section requires is that the invoice should contain a true statement of the actual cost of the goods in a case of a bona fide purchase; and the forfeiture does not and cannot attach, unless the goods are not invoiced according to that actual cost, with design to evade the payment of the proper duties. The forfeiture therefore stands upon the ground of meditated fraud; and was not meant to be applied to cases of innocent mistake, or unintentional error. If indeed the goods be invoiced greatly below the ordinary price, it affords a very strong presumption, that the sale is not genuine, but is infected with fraud in its very concoction; and cases may easily be imagined in which this presumption would be so very urgent that it would justly outweigh all positive testimony and be conclusive on the party. Between such cases however and slight deductions from the ordinary price there are many shades of distinction, which would cast more or less darkness on the presumption, and it is not difficult to reach a point at which it would wholly vanish. The presumption in all these cases is but a presumption of fact, of which the jury are to judge and to give their verdict accordingly.

And there is the soundest reason and justice in the law as thus interpreted; for it requires the party to swear to the actual cost; and if he has purchased somewhat below the ordinary price, he cannot, in foro conscientiæ, be justified in making oath to a higher invoice. It would not be the true original price and invoice. The law demands of him entire good faith, and does not mean to ensnare him to his ruin by disclosing the real bargain. If the price however be below the usual price, the collector has a right to have the goods appraised; and the duties paid according to such appraisement. But it is not a necessary consequence, if such appraisement exceed the invoice price, that the goods are forfeited. The act expressly provides otherwise; and if it did not, the same must have been the correct judicial interpretation. Two facts must concur to produce a forfeiture; first that the goods are not invoiced according to the actual cost: secondly, that this is done with a design to evade the payment of the regular duties.

If with these principles in view we examine the charge of the learned judge of the district court, it will not be found difficult to vindicate its entire correctness. The first point in that charge, containing an exposition of the words "actual cost" and "real cost," in the 66th section, has been already sufficiently considered. The next clause puts the case of a sale by a manufacturer to his son, as to which the learned judge declares that if the sale be real and genuine, and the father, on such sale, with a view to a parental indulgence to his son in the bargain, sell to him at a price below the ordinary value of the goods, and such deduction in price is not with intent to evade the payment of duties, and the goods are invoiced at the price, and entered according to the invoice at the custom house, the circumstance of such a sale would not alone subject the goods to forfeiture. In order to bring this declaration to a legal test, we must examine it with all its limitations. In the first place there must be a real and genuine sale between the father and the son. This of course excludes the case, where the consideration is substantially in part money, and in part love and affection; or where the case is in whole or in part a gift. As for instance where the father transfers goods to the son for fifty per cent. below their ordinary market value, with the intent of making a present of the other half price. There is no pretence to say that this is a genuine sale, or that an invoice at such a diminished price could be the "actual cost," in the proper sense of those terms as used in the act. It would seem hardly possi-

ble, if such an invoice were produced at the custom house, and the goods entered thereby, that a jury should hesitate to pronounce that it was a fraud upon the law. But there is a wide distinction between such a case, and the case, where a father, with a view to favor his son, and not to drive a hard bargain with him, makes a small deduction from his ordinary prices, for in such a case the transaction is in substance a sale. It will not do to say that all the motives which lead to a sale at a diminished price are to be nicely weighed, and that if other considerations than money or its equivalent, in however minute a degree, mingle in these motives, the case is to be stripped of its character as a sale; we must look to the substance of the transaction and see, not whether favor, friendship or kindness, in small portions, mingled in it, but whether there was in fact in the contemplation of the parties, a gift, or a sale, or a mixture of both, resulting from considerations partly pecuniary and partly of love and affection. In the next place, the learned judge limits his remarks by adding that the diminution in price (and of course the statement of it in the invoice) must not be "for the purpose of giving an advantage in the estimation of duties;" that is, in the language of the 66th section, not with a design to evade the payment of the duties. And certainly if there be not such a design, the forfeiture cannot arise under the terms of the act. There is therefore no error in law in this part of the charge. Without doubt a transaction of this kind between father and son, where the invoice prices are below the ordinary prices, is open to suspicion; and if the reduction from the ordinary prices be very considerable, the suspicion must necessarily be inflamed to a high degree. And a jury would be well justified, under such circumstances, in requiring the most plenary proof of the purest evidence, before they should place confidence in the transaction as a real sale, or acquit the party of an intent to evade the law. But after all it is but a question of fact, and no court can pronounce what deduction per se is, of itself, conclusive evidence of fraud.

The next case, put by the learned judge, of a purchase at auction, is certainly far less strong than that already considered; and I am yet to learn how in the case of a real purchase at auction, where a genuine correspondent invoice is used without any intent to evade the payment of duties, it is possible to contend with success for a forfeiture under the act. If it be, then it must be upon the ground that sales at auction are ipso facto fraudulent; or that the disclosure of the truth and innocence of a bona fide purchase is forbidden by the law. Consequences so absurd cannot be justly deduced from any fair construction of the statute.

The next and last point stated by the district judge in his charge is merely an application to the present case of the principles which he had already illustrated. If those principles were correct, then there is no error in the application; and after what has been said, it is scarcely necessary to add, that in the judgment of this court, there is nothing in this charge on which to hang a reasonable doubt. Whether, under the circumstances of this case, the jury might not have been well warranted in coming to a different verdict, is no part of our duty to consider. Let the judgment be affirmed. Judgment affirmed.