[No. 1961. Decided October 8, 1895.]

THE STATE OF WASHINGTON, *on the Relation of Ban-croft-Whitney Company,* v. JAMES H. PRICE *as Secretary of State.*

PUBLIC PRINTING — CONSTRUCTION OF STATUTE.

The provision of the act of 1895, relating to the sale by the secretary of state to the Bancroft-Whitney Company of the stereotyped plates of volumes 1 to 9 of the Washington reports "at the actual cost of the same to the State of Washington, as shown by the item on the original bill from the state printer," cannot be construed as requiring the Bancroft-Whitney Company to pay the cost of composition incurred in the publication of the reports.    (DUNBAR, J., dissents).

*Original Application for Mandamus.*

*Solon T. Williams,* and *E. C. Hughes,* for relator.

*James A. Haight,* Assistant Attorney General, for respondent.

The opinion of the court was delivered by

Scott, J.— This is a proceeding in mandamus and is submitted upon an agreed statement of facts.

At the last session of the legislature an act was passed relating to the printing of the supreme court reports (Laws 1895, p. 97). The reporter was directed to enter into a contract with the relator for the publication of future reports during a period of ten years. The act further provided that the respondent should sell to the relator the stereotyped plates of the published reports, volumes 1 to 9, inclusive, upon the following conditions:

"Whenever the number of copies of said volumes on hand in the secretary's office shall reach the mini-

mum number of one hundred (100) then the secretary shall sell the plates of such volume or volumes at the actual cost of the same to the State of Washington, as shown by the item on the original bill from the state printer."

And further:

"That said Bancroft-Whitney Company will enter into a contract with the secretary of state to reprint such volume or volumes at once, and to keep on hand and for sale, for not less than ten years, a sufficient number of copies to supply all demands from the state and public, at the uniform price of two dollars and fifty cents ($2.50) per volume."

A contract was entered into between the reporter and the relator under §§ 2 and 3 of said act, and volume 10 of the reports was published, and three hundred copies thereof were tendered to the respondent. Prior thereto the number of copies of certain of the previous reports had reached the minimum of one hundred and less, and the respondent demanded, as a condition precedent to his receiving said three hundred copies of volume 10 and issuing his certificate of acknowledgment therefor, that the relator should purchase the stereotyped plates of said volumes to be reprinted.

It is conceded that the relator was willing and offered to do this at the rate of fifty cents per plate, but the respondent demanded a greater sum as the actual cost of said plates; and claiming that the two contracts provided for in the act were interdependent, upon the refusal of the relator to purchase said plates at a greater price than fifty cents per plate, he refused to receive and issue his certificate of acknowledgement for said three hundred copies of volume 10, and this proceeding was instituted to determine the controversy.

The relator contends first, that the contracts pro-vided for in the act are independent ones, and that the respondent cannot refuse to receive volume 10 under the first contract, even though the relator failed to carry out the second contract; and second, that the price of the plates is fixed by the act at fifty cents per plate.   Owing to the conclusion we have reached as to the second point a decision of the first is unnecessary. Volumes 1 to 9 of the Reports were published by the state printer at the expense of the state under a pre-vious act of the legislature (Laws 1891, p. 74), the paper and material used therein being furnished by the state.   Said volumes were printed from the original type.   Thereafter, in compliance with section 3 of said act, stereotyped plates were made by the state printer, he furnishing the material, and they were charged for in the bills submitted by him as a separate and dis-tinct item, at the rate of fifty cents per plate.

It is contended by the respondent, however, that this does not represent the actual cost of said plates to the state, and that the state is entitled to an additional sum for composition.   But we do not think this con-tention can be sustained.   The composition was a necessary part of the work in publishing the reports originally.   The making of the plates was a secondary matter and caused no additional work in publishing the volumes originally, and in no way increased the cost of the first publication.   Nor do we find enough in the language of the act to sustain the respondent's contention.   The word "actual" lends no additional significance; "actual cost" can mean no more than cost, and cannot control the clause "as shown by the item on the original bill from the state printer." This item was fifty cents per plate.   It is perhaps true that the act might better have used the words

"fifty cents per plate," but the specification given was just as explicit and leaves no room for construction.

We are of the opinion that the writ should issue, directing the respondent to receive said three hundred copies of volume 10, and give relator his certificate of acknowledgment thereof upon the relator's complying with the offer to purchase the plates as specified.

HOYT, C. J., ANDERS and GORDON, JJ., concur.

DUNBAR, J. (*dissenting*).—I think the phrase "actual cost" was used by the legislature in the most comprehensive sense, intending to include all the material and labor that was necessary to produce the plates. If the state had the type already set on some prior contract, by reason of which the plates could be produced at a lower rate, that was a benefit which should inure to the state and which should not be appropriated by the plaintiff. Nor do I think the expression, "as shown by the item on the original bill," is controlling. The legislature personally did not know what the itemized bill would show, but naturally supposed it would show the actual cost, and the actual cost was the essential thing in the mind of the legislature. The bill of the printer was simply referred to as a source of information. Believing that the acts were independent it follows that, in my judgment, the writ should be denied.