NORA COTTER McGUIRE, Appellant, v. WILLIAM HALLORAN
et al., Appellees.

**MORTGAGES:** Absolute Deed as Mortgage—Construction of Con-
tract—Intention.  Whether an absolute deed was in fact a mort-
gage, must be determined from the written contract itself
(read and construed in the light of the circumstances surround-
ing its execution, and of the practical construction given to it
by the parties) which gave rise to the deed, when such contract
is not so ambiguous as to require extrinsic evidence for its ex-
planation or understanding.   Transaction reviewed, and *held,*
the absolute deed in question constituted a mortgage, with con-
sequent right to redeem after long default on payments.

**MORTGAGES:** Absolute Deed as Mortgage—Foreclosure—Agree-
ment for Avoidance.  An absolute deed which is, in effect, a
mortgage, must be foreclosed by proper action in court, in order
to cut off the mortgagor's right of redemption, any agreement
of the parties to the contrary notwithstanding.

**MORTGAGES:** Redemption—Terms—Authorized Improvements by
Mortgagee in Possession.  On foreclosure of an absolute deed,
which is, in fact, a mortgage, the mortgagee should be allowed
the fair value, without interest, of the improvements made in
good faith by him on the premises, in accordance with the con-
tract attending the execution of the mortgage-deed.

*Appeal from Lyon District Court.*—WILLIAM HUTCHINSON,
Judge.

DECEMBER 18, 1916.

REHEARING DENIED DECEMBER 18, 1917.

ACTION in equity to establish plaintiff's title to 134
acres of land in Lyon County, and to redeem the same from

the lien and claim of the defendants, who are alleged to be holding the legal title in trust as security for the payment of a debt. The trial court dismissed the petition, and plaintiff appeals.—*Reversed and remanded.*

*H. B. Pierce, Edward E. Wagner,* and *George J. Danforth,* for appellant.

*E. C. Roach* and *Simon Fisher,* for appellees.

Weaver, J.—In the year 1900, one Roger Cotter died testate, seized of the land in controversy. He left surviving him five children: Nora (the plaintiff), Kate (the defendant), Maggie, Mary, and Patrick. At the time of the testator's death, the plaintiff, Nora Cotter McGuire, was living with him on the farm, and with them lived the daughter Maggie, a person of feeble mind, and the daughter Mary, an invalid, who is now deceased. By the terms of his will, the father gave and devised the entire estate to the plaintiff, subject to a charge expressed as follows:

1. MORTGAGES: absolute deed as mortgage: construction of contract: intention.

"2. I will and direct that the support and maintenance of my feeble-minded daughter, Maggie Cotter, and the support and maintenance of my daughter Mary Kent, shall be a charge upon all of my property so long as they or either of them may live. Said support to be upon the farm where I now live, and such support to be such as in my lifetime I gave to my said daughters at my home.

"3. I will and direct that my said daughter, Nora, after she is able from the proceeds or rent of my farm to pay off and discharge the mortgage now on the same, and pay all other debts existing against my estate, she pay to my daughter, Mrs. Kate Halloran, the sum of five hundred dollars."

Nora was also named executrix of the will, without bond. She qualified for the trust, and undertook to administer upon the estate. Claims against the estate were presented and allowed, to the amount of $2,350, including a mortgage debt of $1,000, and the executrix obtained leave of court to mortgage the real estate to the amount of $2,500, to obtain the needed money to meet these demands. With her husband, the plaintiff continued to occupy the farm until the year 1907, supporting and maintaining the feeble-minded sister, Maggie, also the sister Mary, until her death. The only apparent source of support for the family was the land in question, and they seem to have failed to make the income therefrom sufficient for that purpose, with the result that the mortgage lien authorized by the court was not reduced, and other indebtedness accumulated. In January, 1904, plaintiff, in her own right, placed an additional mortgage on the property, to secure an indebtedness of $1,195 to one O. P. Miller, and in March of the same year, a third mortgage for $1,125, to the First National Bank of Rock Rapids. Several judgments were also obtained against plaintiff. In 1907, the Miller mortgage was foreclosed, and the property sold at sheriff's sale, under special execution. Miller was the purchaser, and received the sheriff's certificate of sale, subject to the statutory right of redemption in the plaintiff. On October 1, 1907, and during the year of redemption from said sale, plaintiff entered into a written contract with her sister Kate Halloran, and brother-in-law, William Halloran, which reads as follows:

"Contract.

"This agreement, between William Halloran and Kate Halloran, parties of the first part, and Nora McGuire, party of the second part, witnesseth:

"That in consideration of the first parties taking up the mortgage of the First National Bank of Rock Rapids, and

certificate of sheriff's sale and taxes on the East 54.39 acres of the Southwest Quarter and the West 80 acres of the Southeast Quarter of Section 6, Township 99, Range 44, the second party agrees to repay to said first parties all money paid by said first parties as above, and to pay said first parties for keeping Maggie Cotter the sum of $12 per month, and the sum of $500 in lieu of the bequest to Kate Halloran under the will of Roger Cotter, and all taxes paid by the first parties on said premises with 8 per cent per annum from October 1, 1908; the first party is to credit the second party on said sums, the sum of $415 per year as a rental on said premises. If the mortgage of $2,500 now on said land as a first mortgage shall not be paid at the time the second party takes the said land, as herein agreed, she shall take the land and pay all said sums above named, subject to said mortgage, and if said mortgage shall have been paid by the first parties, the same shall be paid by the second party in addition to the other sums as herein provided for. If the said second party pays said sums as herein provided within three years from this said date, the first parties shall deed said premises to whomsoever the second party may direct, but if the second party fails to pay said sums within three years from the date hereof, then this contract to be void, otherwise to be in full force and effect. Time being the essence of this contract. The first party may make necessary permanent improvements including tiling on said premises which the second party shall pay for at actual cost with 8 per cent interest from the time actually paid.

"The second party, in addition to the other sums herein provided is to pay the first party the sum of $130 for keeping Maggie Cotter from March, 1907, to the present time.

"The first party to account for the rent received by him for the year 1907. Second party to reimburse first parties

for interest paid on first mortgage on said land in addition to the other sums above provided for.

"Dated October 1, 1907.

"Wm. Halloran,

"Kate Halloran,

"Nora McGuire."

After the execution of the foregoing contract, and the expiration of the year of redemption from the foreclosure sale, the sheriff executed a deed to the First National Bank of Rock Rapids, which was then the holder of the certificate of sale, and soon thereafter, the bank conveyed the land, by special warranty deed, to William Halloran, the only consideration paid being the aggregate amount of the plaintiff's indebtedness on the claims held by Miller and the bank. By the terms of said deed, Halloran assumed the payment of the first mortgage lien of $2,500. Pursuant to the contract, defendants assumed control of the land and the care and maintenance of the sister Maggie. On March 2, 1914, the defendants served upon the plaintiff a paper entitled, "Notice of Declaration of Forfeiture." This instrument, after reciting the making of the contract above quoted, proceeds to address the plaintiff and her husband as follows:

"You, the said Nora McGuire, and Marcus McGuire, are hereby notified that the said Wm. Halloran and Kate Halloran hereby declare their intention to forfeit said contract against the said Nora McGuire for the reason that the said Nora McGuire did fail to comply with the terms and conditions of said contract and failed to pay to the said Wm. Halloran and Kate Halloran the sums named in said contract as required by her to be paid within the three years from the date of said contract, and said contract is hereby declared to be forfeited and all rights thereunder held or claimed by the said Nora McGuire, are hereby forfeited. The declaration of forfeiture is hereby made for the reason

that the said Nora McGuire has no rights under said contract, and that all right she had thereunder, terminated and expired by reason of her failure to make payments under said contract, and perform the conditions thereof, within three years from the first day of October, 1907.

"The said Wm. Halloran and Kate Halloran now declare that said contract and all rights thereunder in favor of the said, Nora McGuire are fully forfeited, and that the said rights were so forfeited three years after the 1st day of October, 1907, and that this notice of forfeiture is only served because the said Nora McGuire has claimed some rights under said contract, and not because she in fact had any rights or privileges thereunder at this time, and that after the lapse of thirty days from the date of the service hereof such alleged claim or claims that the said Nora McGuire has or claims to have will be so fully terminated and forfeited as is provided by law.

"Dated this 28th day of January, 1914.

"Wm. Halloran,
"Kate Halloran."

The plaintiff has paid no part of the several sums or obligations mentioned in the contract of October 1, 1907. Soon after the service of the notice just mentioned, plaintiff brought this action to redeem the land from the claims of the defendants, and to compel a conveyance of the legal title to her. In addition to the matters hereinbefore recited, she alleges in her petition that, in the spring of 1907, being unable to support herself and sister Maggie, and pay the obligations imposed upon her by the will of her father, out of the income of the land, she leased it to Patrick Cotter for the current year, at the agreed rental of $415, and with her husband removed to South Dakota, where they made a homestead entry upon the public domain of the United States, having first arranged with the defendants to maintain and care for Maggie, and provided for pay-

ment therefor from the rental of the land. She admits the making of the contract of October 1, 1907, but says neither party intended thereby to convey the land to the defendants, nor to vest them with any interest therein, except as a lien for the repayment of such sums as the defendants should pay in taking up the outstanding mortgages, the certificate of sale, taxes, and actual expenses incurred for necessary repairs. She further says that she is a person of limited education and experience, and had no comprehension of the legal effect of such writing; that she had no independent advice or counsel in the matter; that defendants were represented by counsel, who drew the contract; that she was assured by defendants and their counsel that the instrument was to be executed for the sole purpose of evidencing the lease of the farm to defendants, and to secure them for the moneys paid or advanced by them under said agreement, and for no other purpose; and that such was, in fact, her sole thought and purpose in making such contract. She further avers that defendants have never paid or accounted to her for the rent of the land; that, instead of redeeming the land from the sheriff's sale, they wrongfully permitted such sale to go to deed, and then took conveyance from the purchaser to themselves, in order to divest her of her rightful title; that they have never paid the first mortgage debt of $2,500; and that the amount expended by them in procuring the title from the bank did not exceed $3,500. Concerning the charge of $500 made in her father's will in favor of Kate Halloran, she says it never became due or payable, because of the insufficiency of the income from the land to enable her to make such payment after discharging the prior claims according to the provisions of the will. Concerning improvements on the land made or to be made by the defendants, plaintiff avers that such agreement contemplated only necessary repairs, and not improvements of a new or permanent character. She further alleges that,

within three years from the making of the contract, she offered to pay the defendants the full amount expended by them under the terms of said contract, in consideration of their making proper conveyance of the land to her; but they wrongfully refused to make such conveyance, except upon payment of a sum largely in excess of the amount justly due. She pleads her readiness now to pay the entire sum which may be due from her, upon proper accounting's being made, and demands a conveyance from them re-investing her with the title.

In answer to the petition, defendants admit that plaintiff acquired title to the land by virtue of her father's will substantially as alleged; but say that, through lack of proper management and care, she allowed debts to accumulate, and paid nothing on the mortgage liens or on the legacy provided in the will for Mrs. Halloran, and, when the Miller mortgage was foreclosed and the land sold, she was wholly unable to redeem therefrom, and appealed to the defendants for help, and besought them to take title to the premises, assume the liens thereon, and "give her the further opportunity to secure and keep the land," and that, for such purpose, the contract of October 1, 1907, was made. They aver that the purpose and effect of the agreement was that William Halloran should take title to the land, subject only to the prior mortgage of $2,500, and to the right of the plaintiff to repay the said William Halloran, within three years from that date, the amount of his advances made for the purpose of taking up the indebtedness to Miller and the bank, and other sums mentioned in the contract, amounting in all to $4,000 or more. They further allege plaintiff's failure to make payment of any of the sums secured by the contract, her failure to maintain and care for the sister Maggie, and allege that, before declaring a forfeiture of the contract, they offered to reconvey the land to plaintiff upon

payment by her of a sum much less than the amount due from her; but she failed and refused so to do, until more than three years from the date of said contract had fully elapsed, and after she had ceased to have any right, title, or interest in the property. They further say, in substance, that the notice of forfeiture was served, not as a concession or admission that the same was needed to perfect the defendant's title to the land, but because they understood that plaintiff was making statements indicating some claim on her part to the property; and they gave her the written notice "as a matter of precaution," and for the purpose of "putting the matter at rest." They therefore ask that the petition be dismissed, and that the title to the land be quieted in themselves, against the claims of plaintiff.

After hearing the evidence, the court found for the defendants, and entered judgment against the plaintiff for costs.

Upon the main facts of the case, there is little dispute, though there is considerable difference between the parties on some matters of detail. None of the disputed questions of fact are of controlling importance in determining the nature and effect of the contract between the parties. On both sides, evidence was introduced bearing upon the understanding which the parties had of the purpose sought to be effected by the contract. This was, perhaps, competent, as bearing upon the question whether the title to the property was to be held as security for the plaintiff's debt; but it adds little, if anything, to the apparent effect of the writing itself, though the circumstances attending it are of some importance, as aids to its construction. It appears that the time of redemption from the foreclosure sale was nearing its expiration when plaintiff came back from South Dakota and these negotiations were had with defendants. The parties had a meeting with defendants' counsel and other persons representing the bank, which then

held the certificate of sale as well as the next junior mortgage, and terms were finally agreed upon, by which Halloran was to take care of these pressing claims and give plaintiff three years' time in which to reimburse him, allowing her a yearly rental for the land, and charging her also with $12 per month for the keeping of Maggie, and for certain other items of indebtedness; and, after an agreement was reached, it was reduced to writing in the form in which it is above quoted. Plaintiff admits that she understood that she was thereby obtaining an additional three years in which to redeem the land, and that, if she failed to redeem, she would lose it. Halloran, as a witness, says:

"We agreed to give Nora three years more to redeem. * * * The land was to be deeded to me. It was deeded to me, and I have since held and farmed it."

He further says: "I at all times stood ready to turn over the property by deed, if they paid me the amount I had expended under the contract."

About October 1, 1910, the time the stipulated period of three years expired, Halloran made out a written statement to plaintiff, covering the time from October 1, 1907, charging her with the amount paid the bank, increased by other charges for keeping Maggie, for taxes paid, interest on first mortgage, "miscellaneous repairs," and the amount of Mrs. Halloran's legacy under her father's will, making, with interest, a total of debts of about $5,877, against which he allows credit for the rent of the land. The difference thus found, he styled, "Bal. to redeem $4,272.42." There was some dispute over the correctness of this account. Plaintiff claims to have offered to pay $3,500, and that Halloran refused to accept less than the sum demanded. This the defendants deny, and the truth of the matter we need not attempt to determine. It is sufficient to say that no agreement was made or acted upon, and the differences between the parties finally culminated in this litigation.

As we view the situation, their rights
**2. MORTGAGES: absolute deed as mortgage: foreclosure: agreement for avoidance.** must be determined by the legal effect of the written contract made between them. The language, for the most part, is not so obscure as to require extrinsic evidence for its explanation or understanding, though it is, of course, to be read and construed in the light of the circumstances under which the agreement was made, and in the light of the practical construction which the parties have themselves put upon it. As is usual in this class of cases, the inquiry first suggested is whether the transaction between the parties was in the nature of a loan or advancement of money by Halloran, repayment of which was secured by taking title to the land, or was simply a sale of the land to Halloran, with a condition attached whereby, upon payment of a given sum within a fixed period, the land was to be conveyed to the plaintiff. If it was, in effect, a loan or advancement, to be subsequently repaid, the title to the land being taken as security, then the fact, if it be a fact, that the parties stipulated that failure to make payment in the time agreed upon should immediately and absolutely terminate the right of redemption, and the title to the land in Halloran be thereafter absolute and perfect, would be ineffectual to cut off the plaintiff's right of redemption, except by foreclosure and the decree of a competent court. *Conlee v. Heying,* 94 Iowa 734; *Keeline v. Clark,* 132 Iowa 360; *Fort v. Colby,* 165 Iowa 95; *Russell v. Southard,* 12 How. (U. S.) 138 (13 L. Ed. 927); *Baird v. Reininghaus,* 87 Iowa 167; *Voss v. Eller,* (Ind.) 10 N. E. 74; *Youle v. Richards,* 2 Saxton's Chancery 534. See also 1 Jones on Mortgages (5th Ed.), Sections 242 to 279, and 3 Pomeroy's Equity (3d Ed.), Sections 1192, 1193. On the other hand, if the agreement was, in effect, a sale by plaintiff to Halloran of the land in question, or of her equity therein, subject to a condition or option, by which, if taken advan-

tage of within three years, he would, upon payment of the amount he had invested in the property, convey it back to her, then her failure to make or tender such payment within the time named would effectually terminate all her rights under the contract, and no foreclosure was necessary to perfect the defendant's title as against her.

We have read this contract repeatedly and with much care, to derive therefrom, if possible, the real essence of the agreement which it evidences. Though, as we have said, the language is not obscure, yet it lacks somewhat in definiteness of expression. It nowhere speaks, in terms, of a sale or transfer of the land, or of any interest therein. It places no price or value on the property. Neither, on the other hand, does it, in terms, speak of a loan to the plaintiff which she undertakes to pay. It does, however, provide with sufficent clearness that Halloran will advance or pay out for plaintiff's benefit the money needed "to take up the mortgage of the First National Bank of Rock Rapids and certificate of sale and taxes" on the described land. In consideration of this undertaking, the plaintiff does expressly agree "to repay to said first party all money paid by said first parties as above," and in addition thereto, certain other charges. Thus far, the situation is too clear to be open to serious argument. The defendants bind themselves to advance or pay the money necessary to take up the bank's mortgage and the sheriff's certificate and the taxes on the property, and plaintiff, in consideration thereof, unequivocally and unconditionally promises to repay these amounts, with interest. Were this all, no one would hesitate to say that the effect of the agreement was to create between the parties the relation of debtor and creditor, or borrower and lender. Do the subsequent stipulations found in the paper necessitate any different conclusion? In our judgment, they do not. After providing, in reasonably clear terms, for

the advancement of the money by the one party and 'for its repayment by the other, we find this sentence:

"If the said second party pays said sums as herein provided within three years from date, the first parties shall deed said premises to whomsoever the second party may direct; but if the second party fails to pay said sums, then this contract to be void, otherwise to be in full force and effect."

Should this clause be given any greater force and effect in this contract than would be given it if embodied in an ordinary mortgage? In a mortgage, it would be held to mean no more than that, when cause arises for the so-called forfeiture, the mortgagee may declare the debt due, and proceed to foreclose his lien according to the forms of law. Unless such be the meaning and effect of that clause in this contract, it would seem to have none. The literal language of the provision is that, if plaintiff fails to pay within three years, "then *this contract* to be void." Not any particular stipulation, but the entire agreement is to be thus rendered void, and if void, then neither party can base any claim of right thereon. Certainly, such was not the intention of the parties. Taken as a whole, the entire force and effect of the agreement is that defendants will furnish the money to "take up" the claims then being pressed against the plaintiff and her property, and give her three years in which to pay the debt so created in defendants' favor. Nothing is said in express terms to the effect that defendants shall take the legal title to the land, or shall hold it as their security; yet, when construed in connection with the existing circumstances, and the provision made for a reconveyance on payment of the debt, we think it fairly implied that defendants were expected to take the title under the sheriff's sale and hold it in the nature of a mortgage security, and we see no escape from the conclusion that plaintiff is entitled to redeem therefrom. That defendants did not under-

stand that they were acquiring absolute title in their own right is quite conclusively shown by their agreement to pay rent for the land, and by the credit given therefor by them in the statement of the sum required for a redemption by the plaintiff. The agreement did not confer a mere option on the plaintiff. She became thereby the debtor of the defendants, upon her unconditional promise to pay. She could not satisfy that promise or escape from its obligation by simply allowing the three-year period to expire without action on her part. Had there been no margin of profit in the land, or for any reason defendants did not wish to accept it in full discharge of her debt, no reason appears why they could not, at the end of three years, have enforced their claim by foreclosure in equity, or have recovered personal judgment on their claim in an action at law. There is nothing in the writing—nor, indeed, in any of the alleged oral agreements or understandings—by which defendants bound themselves to accept the land in discharge of the debt, or by which plaintiff reserved any right to cancel her obligation by a surrender of the land.

It follows that the decree of the district court must be reversed.

3. MORTGAGES: redemption: terms: authorized improvements by mortgagee in possession.

The testimony in the record being insufficient to enable this court to declare an accounting between the parties upon defendant's claim for improvements which he alleges he has placed upon the land under the terms of the written contract of October 1, 1907, and for other expenditures made by him as therein provided, the cause will be remanded to the district court for that purpose. Upon the hearing, the trial court may receive such additional evidence as will enable it to state the account between the parties. The defendant will be entitled to receive the fair value of such improvements as he may have placed on the land in good faith before this suit was begun,

but interest should not be allowed thereon for the period during which he has himself been in the possession, use, and enjoyment thereof. He will also be credited with other payments and expenditures made by him for or on account of the plaintiff, pursuant to the written agreement above mentioned.

On the other hand, he should be charged with the agreed annual rent of the land from the time when he went into possession to the commencement of this action, and thereafter at the reasonable and fair valuation of such use and enjoyment until he shall surrender possession. If on the trial, it shall develop that there are other alleged charges or credits claimed by the parties, or either of them, the court will determine them as shall appear to be just and equitable, and within the scope and intent of the contract. Care is to be taken at all times to preserve the priority of the charge upon the property in favor of Maggie Cotter.

*Reversed and remanded.*

LADD, EVANS, and PRESTON, JJ., concur.