Weaver, C. J., Gaynor and Stevens, JJ., concur.

---

Nora Cotter McGuire, Appellee, v. William Halloran et al., Appellants.

**FIXTURES:** Mortgagor and Mortgagee—"Permanent Improvements." An agreement to pay a real estate mortgagee, in possession, for "permanent improvements," does not embrace a grinding mill, nor a windmill tank, nor an interest in a rural telephone company, in the absence of evidence showing that such articles are a part of the land; neither does such agreement embrace an undivided interest in an ensilage cutter.

**WORK AND LABOR:** Value. The court may not, ordinarily, assume the value of service, in the absence of evidence bearing thereon.

**CONTRACTS:** Construction—"Actual Cost." An agreement by a mortgagor, out of possession, to pay a mortgagee, in possession, the *actual cost* of permanent improvements made on the premises, simply means that mortgagor will pay the *actual amount of money expended* by mortgagee—does not embrace a promise to pay mortgagee for his own personal labor.

**MORTGAGES:** Mortgagee in Possession—Rents. A mortgagee in possession, under an agreement to credit mortgagor with a specified annual rental, will be charged with the fair, reasonable rental from the date when he wrongfully refuses to permit the mortgagor to redeem.

**WILLS:** Construction—Support of Feeble-Minded Child. A provision in a will, making the support of a feeble-minded person a charge upon land, and, in effect, providing that such support should be on the land, and such as testator had given the child, is construed, and held not to justify a charge against the land equal to what a stranger would exact for such support.

*Appeal from Lyon District Court.*—William Hutchinson,
Judge.

February 17, 1920.

Accounting in pursuance of an order therefor in *Mc-
Guire v. Halloran,* 182 Iowa 209, resulted in a decree fixing
the amount owed by the plaintiff to defendants, March 1,
1919, at $8,500, including the interest on a first mortgage
of $2,500, up to September 11, 1918, and directing the pay-
ment thereof prior to February 1, 1919, without interest,
and, if not paid, directing special execution to be issued
against the land. It was also ordered that the defendants
support and maintain Maggie Cotter until March 1, 1919.
Both parties appeal, plaintiff perfecting her appeal first.—
*Affirmed.*

*Herrick & Herrick* and *William Mulvaney,* for appel-
lants.

*E. E. Wagner* and *George J. Danforth,* for appellee.

Ladd, J.—I. One Roger Cotter died testate, April 26,
1900, seized of 134.39 acres of land in the S½ of Section
6, in Township 39 north, Range 44 west, in Lyon County.
Decedent was survived by a son and four daughters, two
of whom were plaintiff and the defendant Kate Halloran,
and, of the other two, Maggie was feeble-minded, and Mary
was in ill health. By the terms of the will, the land above
described was devised to plaintiff, but charged with the
support and maintenance of Maggie and Mary Cotter so
long as either of them might live, and this to be upon the
farm, and "such support to be as in my lifetime I gave to
my said daughters at my home." The will also required
plaintiff, after satisfying a mortgage of $2,500 on the farm
and other debts, to pay Mrs. Halloran the sum of $500. It
was duly admitted to probate, and plaintiff took possession

of the premises thereunder, and cared for her sister Mary until her death, and for Maggie until March, 1907. In the meantime, she found it necessary, in order to discharge claims against the estate of decedent and expenses of her own, to execute, with the approval of the court, a mortgage of $2,500 on the farm, and later executed another thereon. On the 1st of October, 1907, she entered into a written agreement with the defendants, under the terms of which the latter undertook to take up a certificate of sheriff's sale, and pay the taxes on the said land, it appearing that the mortgages last above mentioned had been foreclosed, and the land sold thereunder; and that plaintiff should repay amounts so paid, and also pay for keeping Maggie, $12 per month, and $500 in lieu of the legacy to Mrs. Halloran, with 8 per cent interest per annum from October 1, 1908; and she was to be credited $415 per annum, as the rental of the premises. It was also stipulated that "the first party may make necessary permanent improvements, including tiling on said premises, which the second party shall pay for at actual cost, with 8 per cent interest from the time actually paid;" that plaintiff pay the defendants $130 for keeping Maggie from March to October 1, 1907; and that defendants should account for the rent received for that year; and the latter were to be reimbursed for interest paid on the first mortgage. This instrument was construed, in *McGuire v. Halloran*, 182 Iowa 209, where it appears in full, to have been executed as security for the payment of money; and, as the testimony was insufficient to enable the court to declare an accounting between the parties, the cause was remanded therefor. After this had been done, defendants, on September 3, 1918, filed a statement of account, additional to that previously asserted up to October 1, 1910, which amounted to $4,280.02, as follows:

Taxes from 1910 to 1916, inclusive ..... $  591.77
Interest paid from and including 1908 to
   1916 ............................. 1,725.00
Commission on renewing loans ....... 250.00
Building fences and improvements .... 6,000.00
Keeping Maggie from October 1, 1910 .. 5,720.00

This last item was increased, by an amendment, to
$11,440, and the defendants ask for interest on the several
amounts, making a total claim of $18,566.79.

The correctness of the account, as stated by defendants,
up to October 1, 1910, is not challenged by the plaintiff.
We shall assume, then, that plaintiff was then indebted to
defendants in the sum of $4,280.02. The rent stipulated
should have been applied on the $130 owed for the care of
Maggie, and in compensation for Maggie's support, and
the payment of taxes, necessary repairs, and any balance on
the interest accruing on the advances made. So applying
the rent, during this period, interest on the balance of the
amount paid for redemption, and that allowed in lieu of the
legacy, at 8 per cent per annum, from October 1, 1910, up
to October 1, 1914, is $1,369.60. Under the order of the
court in McGuire v. Halloran, supra, annual rent is to be
allowed until the beginning of the suit, as stipulated in the
contract. No rent had been credited in defendants' state-
ment for 1910, and $415 will be allowed for that year, and
for the four years following. For this period, it amounted
to $2,075. Having enjoyed the use of the premises at the
rental stipulated in the contract, they are not in a situation
to object to bearing the burden therein imposed, and they
will be allowed, for keeping and caring for Maggie, $12
per month, as agreed in that instrument. They will be al-
lowed $596 for her care up to December 19, 1914. To that
date, the defendant paid taxes to the amount of $404.87.
Adding the several amounts owed by plaintiff, we have a

total of $2,370.47, and, subtracting the rent therefrom, there is left a balance of $295.47. Interest is not allowed on taxes, as these should have been paid from the rents, and the promise to pay interest thereon, found in the contract, referred to those not met from the rents.

II.    Counsel for defendants, at the beginning of their argument, set out a statement of their claim for improvements made on the premises, aggregating $4,279.62. This includes $232.79, which was included in the

1. FIXTURES: mortgagor and mortgagee: "permanent improvements."

statement covering items up to October 1, 1910, and should be deducted. It also includes a grinder mill at $15, which does not appear to have constituted a permanent improvement, and this item will not be allowed. Nor is a tank at a windmill ordinarily attached to the land, and the item of $18 therefor will be rejected. Admittedly, an ensilage cutter, as it belonged to four persons, and but a one-fourth interest therein was bought by plaintiff, is not to be regarded as a permanent improvement, and the charge of $38.50 for a one-fourth interest therein should not be allowed. Nor can a share in a rural telephone company be regarded as in the nature of a permanent improvement, unless so shown to be, and the $31 charged therefor is an improper item. Adding these items, we have $335.29, which should be deducted from the total of defendant's statement, which would leave $3,944.33. Included in these several items, also, are the following, for services rendered by defendant:

Hauling sand for hog house .............. $ 75.00
Hauling brick for silo ................. 25.00
Hauling furnace ....................... 35.00
Labor on house and hauling lumber ..... 225.00
Labor on hog house ................... 17.00
Labor on house in winter .............. 125.00
Labor for sandpapering house .......... 49.00
Labor on cement work on barn ......... 142.00
Labor shingling barn .................. 13.50

The charges for services rendered amount to $706.50. Something over $135 of this appears to be for hauling, and about $500 for labor performed; and it appears from other items that over $500. was paid to mechanics for labor done in making the improvements. There is no evidence in the record indicating that the sums charged were the reasonable values of the services rendered, and, in view of the amount paid for the services of others, the defendant will hardly be accused of underestimating the value of what he has done. Though the court said, in its opinion in *McGuire v. Halloran*, supra, that, in the accounting, "the defendant will be entitled to receive the fair value of such improvements as he may have placed on the land in good faith before this suit was begun," and that interest should not be allowed during their occupancy, the contract, as indicated above, provided that defendants might "make necessary permanent improvements, including tiling on said premises, which the second party shall pay for at actual costs, with 8 per cent interest from the time actually paid." Manifestly, the court, in referring to the "fair value" of the improvements, meant such value as ascertained under this portion of the contract. Surely, it was controlling, and the court must have intended that effect be given thereto. The parties, in the introduction of evidence, appear to have so construed what the court said, though unhappily

expressed, as having reference to the clause of the contract quoted; for there was no evidence introduced as to the present value of the buildings, save in showing the amounts paid for materials and labor. Only the defendant William Halloran testified on this subject, and his testimony was solely of what the materials cost, and what he paid for labor performed, and that the value of materials and labor was 35 per cent higher at that time than when the buildings were constructed. This would furnish some evidence of the value of the buildings, but they had been occupied for many years, and there was nothing to indicate their present state of repair, or whether they were so constructed or the designs such, in view of present requirements, as to render them equal in value to such cost. The court can hardly be expected to assume,

2. WORK AND LABOR: value. without any proof, that the amounts charged for services rendered by Halloran were the reasonable value thereof, or that the reasonable value of the improvements necessarily included such charges, and that there had been no impairment from long use.

The contract, as we think, rightly defines what plaintiff should pay for the improvements: that is, she "shall pay for the actual cost, with 8 per cent interest from the time actually paid." Manifestly, this has reference to the amount paid out by the defend-

3. CONTRACTS: construction: "actual cost." ants, and not to labor which they may have performed. In *McCoy v. Hastings & Bradley Co.*, 92 Iowa 585, "the cost price is said to be what is actually paid for an article." In *Sylvester v. Ammons*, 126. Iowa 140, it is said to be "what is actually paid or promised to be paid for an article." See *Hazelton Tripod-Boiler Co. v. Citizens' St. R. Co.*, (Tenn.) 72 Fed. 317, 321. In *Mayor and Aldermen of Newton, Petitioner*, 172 Mass. 5 (51 N. E. 183), the court said:

" 'Actual cost' means real cost, as distinguished,

amongst other things, from estimated cost (*Lanesborough v. County Commissioners*, 6 Metc. 329), or from market price, which may include matters which do not enter into the real cost. *Alfonso v. United States*, 2 Story, C. C. 421; *United States v. Twenty-Six Cases of Rubber Boots*, 1 Cliff 580. The word 'cost' is of limited significance,—much narrower than 'damages,' for instance, which, in the case of laying out one railroad over and across another, has been held not to include compensation for the interruption and inconvenience to the business of the latter, occasioned thereby. *Massachusetts Cent. Railroad v. Boston, C. & F. Railroad*, 121 Mass. 124. In *Lexington & W. C. Railroad v. Fitchburg Railroad*, 9 Gray 226, the 'actual cost' of running trains was held not to include interest on cars, and to mean money actually paid out. And in *Alfonso v. United States*, under the revenue act of 1799, Chapter 128, Section 66, it has been held that the words 'actual cost' meant the actual price paid in a bona-fide purchase, and not the market value, thus excluding any idea of profit or return. See, also, *United States v. 16 Packages of Goods*, 2 Mason 48; *United States v. Tappan*, 11 Wheat. 419, 423. The object of the provision which we are considering was, it seems to us, in view of the relations of the parties to the work and to each other, to exclude in the accounting between them any profit, and everything except what fairly might be reckoned as a part of the real cost of the alterations."

Under the revenue laws of the United States, the actual cost is held to mean "the price given and every charge which attended the purchase, and the exportation paid or supposed to be paid at the place whence the article is exported." *Goodwin v. United States*, (Pa.) 10 Fed. Cas. 625. In *The United States v. Sixteen Packages*, (Mass.) 27 Fed. Cas. 1111, the court declared that the actual cost means "the true and real price paid for the goods upon a genuine

bona-fide purchase." See *State v. Price,* 12 Wash. 653 (42 Pac. 120).

The intention manifested in the contract under consideration was that the defendants be reimbursed for whatever they actually paid out for improvements, and not for labor performed by themselves, whether in hauling or in doing other work, largely for their own convenience. In the former opinion, the court directed that no interest should be allowed, notwithstanding the language of the contract; and, of course, this is not inequitable, if defendants are not charged with the use of the improvements as part of the rental of the lands. Deducting the several items referred to from the total claimed, and there remains $3,237.-63, which is allowed for improvements.

III. The plaintiff should be allowed the reasonable rental of the land from December 19, 1914, to March 1, 1919. But one witness testified concerning the reasonable value of the use of the land, and he was of the opinion that the reasonable rental thereof during the year 1915 was $5.50 to $6.00 per acre; during 1916, from $7 to $8 per acre; during 1917, about $8 per acre; and in 1918, from $8 to $10 per acre. The witness had not seen the land recently, and did not "take into consideration any special improvements," but "undertook to give about the value that lands—similar lands with similar improvements—would rent for," and testified that "he had rented unimproved land $1 to $1.50 less, because there were no buildings on it," and that "his idea was that the difference would be from $1.50 to $2.00 per acre." The evidence disclosed that there were improvements on the land in controversy before the defendants moved thereon, though not in good repair, and the evidence did not disclose what the land in such condition, and without improvements made by defendant, would rent for. We are inclined to think that plaintiff

4. MORTGAGES: mortgagee in possession: rents.

should be allowed about $1 less than the maximum rent, as estimated by the witness, and therefore compute the rent for 1915 at $5 per acre, the rent for 1916 at $7 per acre, the rent for 1917 at the same price, and the rent for 1918 at $9 per acre, making altogether, for the four years, $3,-762.92. The plaintiff will be credited with this amount.

IV. In the will, under which plaintiff claims, the support and maintenance of Maggie Cotter were made a charge upon the farm devised to plaintiff, and therein testator required "said support to be upon the farm where I live, and such support to be such as in my lifetime I gave to my said daughters in my home." This was the measure of support which plaintiff was required to give her feebleminded sister; and, in entering into the contract under the terms of which defendants undertook to care for this sister, and to so do at $12 a month, the parties must have had in mind the provisions of this will, for the compensation was scarcely more than enough for her bare necessities. But for this provision of the will, one sister would have been under quite as much obligation to care for her as the other, and it must have been that this thought entered into the arrangement made between them. She was continuing in the home of the testator, and the measure of her compensation ought not to be that which would be fixed, were a stranger to undertake to care for her; and we are of opinion that, notwithstanding the evidence of what would be a fair price, were a stranger to take her in their home, under the peculiar circumstances, the defendants ought not to be allowed to exceed $1.00 per day therefor, from the time of the beginning of the suit to March 1, 1919, or $1,531.

5. WILLS: construction: support of feeble-minded child.

V. In addition to taxes previously allowed, the sum of $188.79 was paid for taxes of 1915 and 1916, and this should be credited defendants. They also claim to have paid $1,725 as interest on the loan on the farm, which is

unsatisfied; and this item is unchallenged. Defendants
are also entitled to credit for interest on the balance of
$4,280.02 from October 1, 1914, to October 1, 1918. Inas-
much as defendants were denying plaintiff's right to redeem,
and were claiming ownership of the land, they ought not
to be allowed more than 6 per cent interest during this
period, which would amount to $1,027.20. The total
amount credited to defendants in this paragraph is $2,940.-
99. In the account, as we state it, the defendants are cred-
ited as follows:

| | |
|---|---:|
| For balance to October 1, 1914 ........ | $4,280.02 |
| For balance to December 19, 1914 (under Par. 1) ........................... | 295.47 |
| For improvements ................... | 3,237.63 |
| For care of Maggie from Dec. 19, 1914, to March 1, 1919 ................. | 1,531.00 |
| Items of last paragraph of opinion ..... | 2,940.99 |
| | $12,285.11 |
| By rent credited to plaintiff ........ | 3,762.92 |
| | $ 8,522.19 |

This so nearly approximates the conclusion of the trial
court that we are not inclined to disturb the same. The
variance may be attributed to slight differences in com-
putation of interest, or in passing on claims of doubtful
propriety. Such a difference tends to confirm, rather than
otherwise, the painstaking care and accuracy of the trial
court in fixing the amount which should be decreed a lien
on the land. The cause is remanded to the district court,
with direction to ascertain the reasonable value of the
care of Maggie from March 1, 1919, to the date of hearing;
and to the amount so ascertained, there should be added
the balance of $8,500, and interest thereon at the rate of 6

per cent per annum from the date of the decree in the district court, and the interest, if any, paid on the existing mortgage on the land since March 1, 1919; and from the sum total of these items, there should be deducted the fair and reasonable rental value of the land since March 1, 1919. Decree will be entered, establishing a lien for this difference, bearing interest at the rate of 6 per cent per annum, against the land, fixing the time within which payment may be made, and providing for the issuance of special execution, if not paid within the period defined, and sale thereunder.  Each party will pay one half of the costs in this court.—*Affirmed and remanded.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.