WASHINGTON, RUFUS CAMPBELL *vs.* GEORGE WORTHINGTON, EXECUTOR
*March,*
1834.                    OF ERASTUS WATROUS.

*(In Chancery.)*

What is in equity a mortgage, and what is evidence thereof.

In a contract for a sale, the time of payment may be rendered immaterial by the
consent or acquiescence of the parties.

This was a bill in chancery, stating in substance, that in
1821, the orator and Watrous entered into a certain contract
in writing, under seal of the terms following, to wit: "The
"said Watrous does hereby agree and obligate himself, his
"heirs and assigns, to give a good warrantee deed to Campbell,
"or to whom he shall direct, of the following tracts of land
"hereafter described on the said Campbell's fulfilling on his part
"the condition hereto annexed, viz, the piece of land now own-
"ed by said Watrous, lying next north of Bulkley & Loomis'
"office, being the same land said Watrous bought of Mason
"Johnson ; also one other piece of land lying in the rear of
"said piece, which was deeded by Col. E. P. Walton to said
"Watrous and Luman and Norman Rublee, together with the
"buildings standing thereon and the brick which now lie on
"the said land, at the price of one hundred and fifty-five dol-
"lars.   Also one other piece of land which was lately deeded
"by Huldah Hoit to Charles Bulkley, Esq. which lies between
"the two pieces of land mentioned above and the house and
"garden of Stephen Wing to be one hundred and fifty dollars.
"Also one other tract of land, (called in these proceedings the
"hill land more or less, at twenty five dollars per acre,) if the
"said Campbell shall pay or cause to be paid to said Watrous
"the sums the said tracts of land amount to at the above
"prices, together with whatever account or demands said Wat-
"rous or Watrous and Rublees now have or may hereafter have
"against said Campbell, for any advances said Watrous or
"Rublees have made him since the 24th day of April, 1821,
"or which they may hereafter make him, either by book,
"charge or otherwise, which he shall justly owe said Watrous
"or Watrous and Rublees, together with the lawful interest
"thereon.   It is however understood, that said Watrous and
"Watrous and Rublees are not hereby allowed to purchase any
"note or notes and demands against said Campbell, to enhance
"their claims against him without his consent as request first
"made known to them, that the said Watrous admits that the

WASHINGTON,
*March*,
1834.

Campbell
*vs.*
Worthington.

" said Campbell has already paid towards the purchase of " said lands, *two hundred and fifty-five dollars and sixty-* " *seven cents*.   The remainder of the purchase money and for " whatever claims the said Watrous and Watrous & Rublees " may have against him, as nearly as may be, in four equal and " annual payments ;  the first payment to be made on the first " day of March next, in grain, at cash price.   It is to be un- " derstood as explanatory to the aforesaid written agreement " and as part of the same, that said Campbell has requested " said Watrous to purchase the land mentioned as deeded by " Huldah Hait to Charles Bulkley, at the price of one hun- " dred and fifty dollars, to which said Watrous consents and " said Campbell agrees to remove the buildings now standing " on that part of the lot which said Watrous bought of Mason " Johnson, and the piece in the rear bought of E. P. Walton " upon said land deeded by Huldah Hait, and to put them in " good repair and to build a brick front, two stories high, nine- " teen or twenty by forty, build a back-house, dig and stone a " cellar and well; fill up the land, as it ought to be, in front, " dig a drain as shall be thought best, build fences, set out " trees, put in good materials and do the work in a strong and " substantial manner, and finish the whole in a style suitable " for such a dwelling.   And said Watrous agrees to pay from " ninety-eight to a hundred and twenty-five dollars towards " brick, and in other good pay, to the amount of not to exceed " one hundred and twenty-five dollars, and from three to four " hundred in hats, as the said Campbell shall want, and the " whole to be refunded to the said Watrous, as before specified, " said Watrous *holding said premises for security*.   Said " Campbell to redeem said debt in all its parts as before men- " tioned.   And it is further understood, said Watrous is to " turn in materials towards the building, if such as are wanted " are offered for hats, and to be included in the hat pay.   It is " further understood, that if said Campbell shall fail to fulfil " the aforesaid stipulations on his part, by the time the last " mentioned payment becomes due, the said Watrous is releas- " ed from all obligations to deed the aforesaid premises as be- " fore mentioned, to said Campbell, his heirs and assigns."
And further stating, that pursuant to said agreement said Wat-
rous did purchase the Hait lot and take a deed thereof in trust
for said Campbe" and that said Campbell for his own use and

WASHINGTON,
March,
1834.

Campbell
vs.
Worthington.

benefit, did proceed to remove the buildings on to the said Hait lot and erected thereon a brick dwelling house, agreeable to said contract, and was on the first day of March, 1825, ready and willing to pay said Watrous, according to said agreement, but said payment was delayed by said Watrous and expressly waived by him; that Watrous made advancements for said Campbell and held notes and receipts therefor, and also had an unsettled account; that Watrous had, as bailiff to the plaintiff, let out said house and taken all the rents to himself; that the hill land went into the possession of said Campbell, who kept the same, and that before there had been any final settlement between the parties, to wit, in December, 1828, said Watrous died and the defendant, Worthington, is executor. The bill states several facts as evidence that Watrous ever considered and treated it as an open and subsisting contract. The orator claims he had several demands against Watrous at his decease, and his estate being represented insolvent, said Campbell presented the same to the commissioners for allowance. These claims were not for any labor or erections on the land. The executor then presented for allowance all the claims of said Watrous for said advancements, and on adjustment having been made by said commissioners, said executor took an appeal which is still pending. The orator then prays that an account may be taken, and if a balance is found in favor of the estate, that on the same being paid, the executor procure licence from the probate court under the statute and deed said premises to said Campbell; and in case of failure of payment, the land be subject to no further claims of said Campbell, and for general relief.

The defendant in his answer, acknowledges the execution of said agreement, and that Campbell did something towards building the house, but entirely neglected to complete it though often requested by said Watrous, who finished the same himself, at great expence. He insists that Watrous paid Campbell much more than all he did was worth, and sets out the claims existing in favor of said estate against Campbell, consisting of several notes of different dates, and receipts and an account, and insists that said contract was a mere contract of sale, and the same was entirely unfilled by said Campbell, and therefore in its terms not binding on said Watrous; and denying that Watrous ever delayed the time of payment or ever considered it a subsisting contract after March, 1825, and that

·it had been abandoned by Campbell; and admitting that it
had always been rented by Watrous and his executor.  The
case had been refered to a master to take the accounts, without
prejudice, who made report, to which there was no exception
by the defendant.  The orator read, among other things, de-
positions of the following witnesses, which tended to prove as
hereafter stated: *Sampson Gale, Daniel Young, Thayer
Townsend, Mason Johnson*; to prove that in 1821 and 1822,
Campbell removed the buildings on to the Hait lot, and there
improved the grounds and built the brick house : *Peter Nel-
son, Daniel Young, Calvin Fullerton* and others, to prove
that Campbell, from 1821 up to the death of Watrous, occu-
pied and improved the hill lot.  *Peter S. Nelson* testifies,
that in October, 1824, Watrous came and consulted Campbell
as to renting part of the house to a certain tenant, to which
he consented only on security for rent being first given.  *Dan-
iel Young* testified to a similar conversation, in 1827, by Wat-
rous, and also testified, that he worked on said house for Camp-
bell in 1823.  *S. L. Baldwin.*—Between June and October,
1825, Campbell procured the front fence to the house to be
built.  *Mason Johnson.*—In May, 1825, labored on the house
for Campbell.  *Luman Rublee.*—Was partner with Watrous—
knows his hand and identified his account for advances to Camp-
bell for the house, as settled in his hand, June 5, 1828.  For
the balance of this, the defendant has Campbell's notes of that
date.  He also testifies, that in May, 1828, Rublee settled
with Campbell an account of the partners, on which was a
balance of about $41, due Campbell.  This was deducted
from a balance, found due on a settlement in Watrous' favor,
in Feb. 1825, and a note taken of that date.  (This is among
the notes claimed by the defendant.)  *John Spalding.*—Be-
fore March, 1825, Campbell applied to him to make payment to
Watrous.  He called on Watrous to ascertain the amount, who
could not then state it.  Soon after the parties were together,
and he then understood they had not had a final settlement,
but it was stated the amount was about $800.  A payment
in grain was soon to become due.  He, the deponent, then in-
formed Watrous he was ready to pay him all Campbell was
owing, agreeably to the contract.  Watrous said he was not
prepared to receive the grain, and wished the payment delayed
another year; and the deponent asked him if he wonld be
holden the same as if the settlement was then made, and he

WASHINGTON,
March,
1834.

Campbell
vs.
Worthington.

said he would. In 1826, Watrous told the deponent, Campbell would have an interest in the house, &c.; that he was ready to deed on being paid.

From the defendant's exhibits it appeared, among his other demands, were several receipts for sums found due, to be answered on settlements of dates before March, 1825, and one in 1827, and several notes.

The defendant read depositions tending to show Spalding mistaken as to dates; also Luman Rublee's deposition to show Watrous frequently applied to Campbell to finish the house, which he neglected, and Watrous finished the garret and did other work to a considerable amount.

*O. H. Smith and Baylies for the orator.*—1. The contract was in equity *a mortgage.* Watrous had the legal title as *security for a loan,* and where equity ascertains such to be the character of the transaction, it treats it as a mortgage.—7 John. Cha. R. 40.—9 Wheaton 495.—2 Gall. 428.—7 Cranch 237.—1 Wash. 125.—1 Powell 146.—2 Swift's Dig. 164.

2. If a mortgage at one time, it so remains, regardless of the *time* of payment.—7 John. Cha. 40.—3 Powell Mort. 947. —6 John. Cha. 417.—2 John. Cha. 182.

3. Even if this was a mere contract for a sale of land, as a general rule in chancery, *time* is not of the essence of a contract of sale.—7 Ves. 265, 273.—13 Ves. 287.—2 Sch. and Lef. 682.—Sug. Ven. 303.—Newland on Con. 230-6.—6 Wheaton 528.—1 Peters. 465.—5 Cranch 262.—Swift's Dig. 18.

4. But if the time is of the essence of the contract, it is competent to the parties to postpone or render it non-essential, as was done in this case.—Newland on Con. 234, 335.—3 Mod. 440.—3 Morr. 81.—19 Vez. 220.—3 Anst. 924.— Chitty Eq. Dig. 62.

5. Watrous should not only be holden to account for the rents, but should answer for those where the tenants have failed or been unable to pay —2 Mad. 28.—Har. Dig. 658.

*Merrill & Spalding, Upham & Keith, for the defendant.*—1. Whether this was a mortgage, or whether the orator has a right to redeem, must be settled by the contract itself; for no subsequent parol agreement could alter its character.—2 Comvns' Dis. 605.

2. This was simply a contract of sale. There was no loan as security for a loan by conveyance of land. The orator was never owner of the land.—2 Swift 163.

3. The contract was for a sale, and to entitle the orator to enforce a specific performance he must show he has fully performed. It is now settled that *time* is of the essence of such contract.—1 John. Cha. R. 370.—4 John. Cha. 559. —5 John. Cha. 194.—Sugden Ven. 278.—2 Swift 86 to 90. —3 John Ca. 60.—13 Ves, 225.

The orator neither completed the buildings nor made the payments.

4. There was no such acquiescence or waiver as excused the defendant. The testimony of Spalding only tends to show an extension for one year and the orator did not then pay, or since.

5. Watrous advanced more than all the orator's erections were worth, and from Rublee's testimony, it appears he abandoned the contract. If so he cannot now enforce it.—2 Swift 20.

6. If the defendant is entitled to redeem it would be injustice to compel the defendant to account for the rents, to reward the orator for his own neglects.

7. If rents are allowed, it should not include those the defendant has been unable to collect.—2 Swift 193.—2 Powell on Mort. 272.—1 Mad. 425.

The opinion of the court was delivered by

COLLAMER, *Chancellor*.—The main question in this case is, what was the real character of the transaction, in its inception, between the parties. It is unquestionably true, that chancery suffers itself to be little embarrassed with the *forms* which any transaction assumes. In whatever hand the fee may remain, or however disguised may be the terms, if the real object be the taking or holding land for the security of a *loan* or *debt*, it is, in equity, a *mortgage*. But if the real character of the transaction be a contract for a sale, and whatever aspect it assumes can be reconciled with that view, it is so to be treated; yet even in this case, if *the time* of payment, from the conditions of the agreement or subsequent arrangements or acquiescence of the parties, is made immaterial, the result is much the same as the case of mortgage. From the terms of this agreement it is apparent there are two distinct features. So far as it

*Margin:* WASHINGTON, *March,* 1834.

Campbell
*vs.*
Worthington.

WASHINGTON,
*March,*
1834.

Campbell
*vs.*
Worthington.

goes to the purchase money for the land, it is merely a contract for a sale; but it further provides for the *advancements* by Watrous and erections and improvements by Campbell. Such advancements became a *loan* or *debt* against Campbell, for which Watrous held the land and buildings *as security.* In this feature it was really a mortgage, whenever any advancements and erections had been made. For the advancements were to Campbell, and he was subject to suit therefor; and the erections were his, made for himself, not Watrous, against whom no action could have been sustained by Campbell therefor. So much appears from the contract itself. In ascertaining the *original* character of a transaction, it is ever to be borne in mind, that no subsequent agreement can alter that character; but it does not therefore follow that we are to examine the original contract only, and shut our eyes to the subsequent acts and concessions of the parties tending to show what was such original character in its inception. A question frequently arises, whether an absolute deed was not really a security and mortgage, as between the parties. Resort is always had to the conduct and concessions of the parties, both cotemporaneous and *subsequent,* and if any thing can be found absolutely inconsistent with its being a sale, it shows it a mortgage. For instance, if the purchaser takes the vendor's note for the purchase money, or receives part payments or interest on the same.

Let us now so examine this case. The whole contract on the part of Campbell was to have been executed in March, 1825. It appears Watrous made him large advancements and Campbell erected buildings, but the defendant insists all was closed in March, 1825, and nothing was done by the parties, tending to show they considered and treated it as an open and subsisting contract after that time. It is however shown that the parties agreed on delaying payment another year, by the request of Watrous. We find Campbell, after March, 1825, erecting a door-yard fence to this brick house, and Watrous assisting and charging it to Campbell—Campbell doing work still on the house and in possession and use of the hill lot, without paying rent, up to the death of Watrous in 1828. In 1824 and 1827, Watrous consulted Campbell as to the tenants for the house. In 1826, Watrous still states Campbell has an interest in the house. In June, 1828, Watrous settles with Campbell an account for articles he had previously furnished for this house,

and takes his notes for the balance; and in May, 1827, he pays
Campbell a balance due him by Watrous and Rublee, on set-
tlement, by applying it on a settlement of similar character for
materials. These are entirely irreconcilable with any other
view of the subject, but that it was an open and subsisting con-
tract, and Watrous held the land and buildings as security for
his subsisting debts against Campbell.

WASHINGTON,
*March,*
1834.

Rufus Campbell
*vs.*
G. Worthington.

How could Watrous be taking Campbell's notes for his own
advancements on his own house, and yet Campbell have no
right to redeem?

Whether this be viewed as a mortgage, or a contract for a
sale, the consent and acquiescence of the parties in treating the
*time* as immaterial is fully shown, up to the death of Watrous;
and Campbell has therefore a right to redeem. Since the death
of Watrous, the orator presented his claims and has pursued
with all the rapidity the law would permit.

Watrous was bailiff to Campbell of the rents which he actu-
ally received, but is not chargeable with those which were lost,
as there is no proof of any gross neglect on his part. Interest
on the same is also chargeable, but as there is no proof that
Watrous was ever called on to account during his life, or the
pay ever offered him or his executor by the orator, or that the
defendant is any way in fault in this case, the orator is not en-
titled to cost against him, but must pay the amount of the pur-
chase money and balances of debt due the defendant, and in-
terest thereon, as reported by the master, within one year;
whereon the defendant must procure a license from the probate
court and convey to the orator, and all further proceedings on
the appeal from commissioners be enjoined; and on failure of
payment by the orator, all further right of redemption be fore-
closed.

Decree accordingly.

PHELPS, *Chancellor, dissenting.*