HELEN K. STANFORD

*v.*

ANNIE F. CUNNINGHAM STANFORD et al.

[Decided June 6th, 1917.]

1. The court of chancery has jurisdiction where both of the parties to a suit are non-residents.

2. That court also has jurisdiction over all questions where fraud is involved.

3. Where a note has been changed as to the time payable to escape the statute of limitations, and where waivers of notice and protest have been obviously inserted over the signatures of the endorsers, and where the holder of the note has slept on her rights for nearly a quarter of a century, and has commenced two suits in New Jersey, allowing them to be dismissed for lack of prosecution, and also attempted to take a technical advantage by bringing suit in New York, these are all circumstances against enforcing the equities of the holder of the alleged note.

On pleadings and proofs.

*Messrs. Cortlandt & Wayne Parker,* for the complainant.

*Mr. I. Faerber Goldenhorn,* associated with *Mr. George W. Carr* (of the New York bar), for the defendants.

LEWIS, V. C.

The bill in this case was filed for cancellation of a note for $6,500, impounded in this state in the hands of a supreme court commissioner, and to enjoin its being taken to New York and used in a suit brought thereon by Mrs. Cunningham Stanford against Mrs. Helen K. Stanford, as residuary legatee of her husband, Philip W. Stanford.

March the 1st, 1913, a rule to show cause with temporary stay was granted.

On further hearing upon affidavits by both. parties, injunction was granted October 6th, 1913, but with provisions so as to permit the New York suit to go on to verdict upon Mrs. Cunningham Stanford giving a bond for $1,000 that she will not proceed in the cause, after verdict, without permission of the court of chancery, and that the commissioner might continue to hold the note subject to be produced at the trial of the New York suit.

An appeal thereupon was taken to the court of errors and appeals against so much of the order as permits the suit in New York to proceed, and permits the note to be taken to New York for use in the suit there.

Before the hearing of the appeal counsel on both sides got together and voluntarily assented to the adjudication of the merits in this tribunal, and the cause has been tried before me. It was not an attempt by consent to confer jurisdiction upon the court, for it is well settled that jurisdiction of the subject-matter of a suit in equity cannot be conferred by consent. *Hudson County* v. *Central Railroad of New Jersey, 68 N. J. Eq. 500,* and other cases. The situation is somewhat similar to that presented by the case of *Varrick* v. *Hitt, 66 N. J. Eq. 442.*

The facts, briefly stated, are: That a note for $6,500 is alleged to have been given by Colonel Asa P. Stanford, a brother of Leland Stanford, the founder of a great university of that name. The colonel is alleged to have obtained the signatures of his son Philip and his daughter Mary as endorsers on the note. The note, with its endorsements, reads as follows:

"6500 New York, Aug. 1st, 1893.
"Two years after date I promise to pay to the order of Mrs. A. F. Cunningham, six thousand five hundred dollars ($6500) at Laidlaw & Co., 14 Wall Street. Value received.
"Due. ......No...... A. P. STANFORD.
"(Endorsed) :
"Service and notice of protest is hereby waived.
"MARY E. STANFORD,
"PHILIP STANFORD."

The complainant alleges that the note is false and fraudulent and tainted with fraud and forgery, in that the signature of Philip Stanford was not genuine, but was forged; also that the

note has been changed from a one-year note to two years; also that the words "Service and notice of protest is hereby waived" were placed there many years after the endorsements on the back of the note were made, and that a conspiracy existed between Colonel Asa P. Stanford and the lady who afterwards became his wife, the now defendant, to mulct the estate of Philip.

Philip was educated at Harvard, and at the time he endorsed the note he was living at Spokane, Washington, afterwards removing to California, and then to Montclair, Essex county, New Jersey, where he died on June 1st, 1898, having executed his last will and testament wherein he bequeathed everything to his wife and appointed her sole executrix. By the last will and testament of Leland Stanford he left one hundred thousand dollars ($100,000) to each of his nephews and nieces, and also the same amount to his brother Colonel Asa P. Stanford. The complainant had the will of her husband duly probated, and thereupon Colonel Stanford engaged counsel and took an appeal to the orphans court of Essex county, which was decided against him. An appeal was then taken to the prerogative court, which was discontinued. Colonel Stanford and the defendant in this suit were both traders in stocks. He died practically penniless. His son Philip seems to have been fond of him, and all seems to have gone along pleasantly until the death of Philip. The fact that Philip did not provide for his aged father's support by his will, but, on the contrary, left everything to the complainant, Philip's wife, seems to have aroused the indignation of the old gentleman, who was at that time about seventy-six years of age. Colonel Stanford and the defendant was friends for a great many years. In 1902 he married the defendant, and died in 1903.

The note was made in New York and endorsed in the States of Connecticut and Washington. The note was delivered and is payable in New York. The maker, when the note was made and continuously till his death, resided in New York. So far as Colonel Stanford, the maker of the note, is concerned, the note is barred by the statute of limitations. As to Philip, however, the statute of limitations of New York did not apply, as he was out of that state.

In the month of November, 1900, an action was commenced in the supreme court of this state by the present defendant against the present complainant, as executrix on the above note, which note was impounded by order of the court in the hands of a supreme court commissioner who died, and it was afterwards placed in the hands of another commissioner by order of the court, and it has been held by him ever since. A judgment of *non pros.* was entered in that action.

A second suit was then brought in the same court between the same parties as to the same subject-matter, except that the complainant was sued as ·devisee of her husband, which action the plaintiff discontinued on the 30th of December, 1901.

Some time in December, 1911, the present defendant commenced suit against the present complainant in the New York supreme court for the county of New York upon the same note, alleging that the present complainant was the sole legatee of Philip W. Stanford, and sole executrix, and received his property and assets, and that no will either of Asa P. Stanford or Philip W. Stanford had been proved in New York. Afterwards the present complainant pleaded to that suit, and notice was given to her by the present defendant that an application would be made to the Honorable Francis Swayze, justice of the supreme court of this state,·for an order that said note should be turned over and delivered by Charles D. Thompson, the supreme court commissioner, who held it under the order of the court. Thereupon the present suit was brought in this court for an injunction to stay the suit at law and for the cancellation of the note; and it is now submitted to the court under stipulations and order whereby this court is to try the whole case, in order to avoid the trial of the case in New York.

In the brief of the defendants' counsel he argues that the court of chancery of New Jersey has no jurisdiction, because both parties are non-residents. There is no basis for such a contention, it being the settled law that where both parties are non-residents it will not prevent them from bringing suit or being sued in cases of this character.

It is also the settled law that courts of equity have jurisdiction over all questions where fraud is involved, but, as a matter

of practice, where there is a complete and adequate remedy at law, courts of equity will usually not assume jurisdiction; but where the court has already assumed jurisdiction, as in a mere matter of discovery, it will continue on and deal equity between the parties on the whole case.

In regard to the comity existing between the states, I think that is entirely settled by the stipulation of counsel.

To my mind, this is an unconscionable claim and should not be sustained except upon the clearest proof of the most satisfactory and unimpeachable character. It is well settled that a court of equity will not lend its aid to enforce an unconscionable claim. *Erie Railroad* v. *Delaware Railroad Co., 21 N. J. Eq. 283; Suffern* v. *Butler, 19 N. J. Eq. 202*, and other cases. All the circumstances surrounding it are suspicious. The changing of the date of the note from one to two years, which is apparent on the face of it, and the fact that unless such change had been made the first suit that was brought against the complainant as executrix, at the time the note was impounded, would have been barred by the statute of limitations; the very obvious insertion of the words "service and notice of protest is hereby waived," above the endorsements of Mary and Philip on the note, which I am satisfied were made many years after the making of the note—such insertion being made with the privity and consent of the defendant; the sleeping on the rights for nearly a quarter of a century; the commencement of two suits in New Jersey and allowing them to be dismissed for lack of prosecution, and nothing further being done until the commencement of the third suit in New York, where they sought to take advantage of a technical situation under the statute of limitations because of the absence from the state of the defendant; the death of Philip and Mary, who are unable to testify; and the very apparent attempt to mulct the estate of Philip, are all circumstances against the equities of the holder of the alleged note.

I think that the defendant has not sustained the burden which the law places upon her—that she has failed to show a legal protest and notice thereof; or if that was unnecessary under the waiver, then she has failed to show that the waiver was part of

the contract of the endorsers; and in the absence of clear and convincing proof on either or both of those questions she could not recover in an action in a court of law, and as equity should follow the law, in this respect she cannot recover here.

The protest of the note shows that words were interlined in different ink, and the protest was made on the due day without days of grace, while it should have been protested on the last day of grace. Days of grace were abolished by the law of New York in 1894, chapter 607, taking effect January 1st, 1895, as to all notes made after the approval of the act of May 9th, 1894. Consequently, if this note were for two years, from August 1st, 1893, it was entitled to days of grace.

According to the Negotiable Instruments law, "where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent endorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

The prayer of the complainant's bill for the relief sought will be granted in accordance with these views.