LEON E. TANSIL, Appellant, v. GEORGE E. McCUMBER et al., Appellees.

MORTGAGES: Warranty Deed as Mortgage — Attending Facts and
1  Circumstances. A warranty deed will be deemed a mortgage (1) when the transaction had its inception in an application by the grantor for a loan; (2) when redemption by the grantor was mutually contemplated; (3) when the value of the land exceeded the amount advanced by the grantee; (4) when the evidence justifies a finding that the deed was exacted as a means of avoiding the foreclosure statutes; and (5) when, in its last analysis, the grantor and grantee occupied the relation of creditor and debtor, even though they did not always consistently maintain such relation. (See Book of Anno., Vol. 1, Sec. 12372, Anno. 22 *et seq.*)

EVIDENCE: Presumption—Law of Sister State. Presumptively the
2, 4  laws of a sister state relative to a named subject-matter are the same as those of this state. (See Book of Anno., Vol. 1, Sec. 11312, Anno. 10 *et seq.*)

EQUITY: Seeking and Doing Equity—Unconscionable Mortgage.
3  Equity will not foreclose an unconscionable mortgage,—i. e., a mortgage pyramided with usury, and given as additional security for part of a debt already secured by mortgage; and especially is this true when the mortgagee is manifestly seeking to sequester the property situated in a foreign state and covered by the original security without accounting for the value thereof.

EQUITY: Unconscionable Action—Pleadings—Waiver. A court of
5  equity will not reject testimony before it showing the unconscionable nature of the transaction upon which action is brought (i. e., that a contract is pyramided with unconscionable usury), simply because the pleadings are general and indefinite, and do not specifically plead such usury. Especially is this true when the parties have treated the pleadings as all-sufficient. (See Book of Anno., Vol. 1, Sec. 11111, Anno. 11 *et seq.*; Sec. 11426; Sec. 12827, Anno. 32 et seq.)

**USURY:** Rights and Remedies—Nonusurious Item of Indebtedness.
6   When foreclosure of a mortgage is refused *in toto* because of the
    fact that unconscionable usury permeated the entire debt except
    as to one item, and when the court separates such item from the
    rest of the contract and, without objection, renders personal judg-
    ment against the mortgagor therefor, it should grant the plaintiff
    legal interest thereon. In other words, it is not justified in render-
    ing judgment for interest on such item in favor of the school fund.

**COURTS:** Jurisdiction—Lands in Foreign State. The district court,
7   when it has jurisdiction of all parties to a controversy, has juris-
    diction to determine their contract relations to lands situated in
    a foreign state: e. g., whether an absolute deed to such lands was
    an absolute conveyance or a mortgage. (See Book of Anno., Vol.
    1, Sec. 10761, Anno. 20 *et seq.*)

Headnote 1:   27 Cyc. p. 1025.   **Headnote 2:**   22 C. J. p. 154.   **Head-**
note 3:   27 Cyc. pp. 1549, 1550 (Anno.)   **Headnote 4:**   22 C. J. p.
154.   **Headnote 5:** 3 C. J. p. 727.   **Headnote 6:** 39 Cyc. p. 990.   **Head-**
note 7:   15 C. J. p. 821 (Anno.)

*Appeal from Appanoose District Court.*—E. S. WELLS, Judge.

### DECEMBER 15, 1925.

SUIT in equity, to recover from the defendants George E.
and Barbara McCumber the amount of a promissory note, and
to foreclose a real estate mortgage given to secure it. J. M.
Vaught was brought in as defendant, because he held the note
of the McCumbers for $871.81, which was secured by the mort-
gage, but the security for which, as plaintiff claims, was subordi-
nate to the security for plaintiff's note of $4,038.96. The McCum-
bers answered. Vaught filed an answer and cross-petition. De-
cree for plaintiff for $500, and in favor of the school fund for
interest on the $500. Decree for Vaught against the McCumbers
upon the note held by him. The plaintiff appeals.—*Modified
and affirmed.*

*Howell & Howell,* for appellant.

*H. E. Valentine,* for intervener, J. M. Vaught.

*Fee & Smith* and *W. B. Hays,* for defendants, appellees.

MORLING, J.—We proceed to discuss the evidence with reference to the findings of the court below that the transactions between the plaintiff and the defendant McCumber involving

1. MORTGAGES: warranty deed as mortgage: attending facts and circumstances.

the Missouri land amounted in equity to a mortgage, and were unconscionable, usurious, and fraudulent, and that the mortgage on the Iowa land now sought to be foreclosed was to be canceled, as a result of plaintiff's taking back the Missouri land.

In 1919, during the boom, Harve McCumber bought, on account of his father, the defendant George E. McCumber, a 285-acre farm in Missouri, at $95 per acre, on which George paid $12,075 and gave a mortgage for the balance, $15,000, with interest at 5 per cent. A $3,000 installment of this mortgage, with $750 interest, came due in the spring of 1921. Defendant was unable to pay. Foreclosure by advertisement, which would be without redemption, was commenced. Harve and Attorney Haynes applied at various places for a loan of the amount necessary to save the farm. After unsuccessful efforts elsewhere, they applied to plaintiff, Tansil, cashier of a bank at LaPlata, Missouri. The question arising at this point is whether the relationship assumed between plaintiff and George McCumber was that of purchaser (or grantee) and vendor (or grantor), or lender and borrower. There is no dispute that they asked for a loan on second mortgage on the Missouri land. Both sides have invited our attention to the 800 pages of transcript, to which we find it desirable in some instances to refer for accuracy. The lower court had the advantage of seeing and hearing the witnesses. Much depends upon the manner of their testifying,—whether the answers were spontaneous or halting and hesitating. The spontaneous statements of the witnesses, as against equivocating or hesitating ones, have more weight. Plaintiff says:

"They put the proposition up to us, and wanted to borrow the money to pay this installment, and give us a mortgage on the farm,—a second mortgage,—and we hesitated about the matter, and told them it was too near the market value of the farm; that, in case that he didn't repurchase this farm,—or that is, in case we had to foreclose our mortgage, if he gave us a mortgage— Q. Yes. A. That we would be out the expense of

foreclosure. Q. Yes. A. And— Q. How much—go ahead. A. Well, that is about all. It was too close to the market value of the farm.''

Later, plaintiff says:

''At the expiration of the first option, you might call it, or first contract, George McCumber * * * said that he believed that things were going to look better in the next few years, and he would like mighty well to renew the option on the farm. We told him that we were not satisfied with the manner in which he had handled the farm, and that we would rather just have our money. * * * You have got all the revenue off of it, and we would rather you would pay us our $6,000.''

Plaintiff does not claim that he refused to make a loan, as requested. He did advance money. He did demand and take obligations for the payment of interest. No written obligation for repayment of the principal was taken. It was the belief of both parties to the transaction that the deed to be referred to was a conveyance, and was not a mortgage. The correctness of their belief depends upon what was actually done, and its legal effect. The plaintiff and his associate, Gooding, throughout expostulate that they did not want the land; that it was not worth the amount of their investment; that they wanted their money. On the other hand, the McCumbers thought they had an equity in the land, and they were anxious to save the $12,000 which they had invested. In general, they regarded the plaintiff as one who was entitled to repayment of the money he had advanced for them, and not as a purchaser; though very notable, among other exceptions, was their demand of plaintiff that he pay them the difference between the $15,000 prior incumbrance on the land and the $18,000 stated as a consideration in the contract to be referred to. Neither party was always consistent in his attitude toward the other, or in his view of the legal relationship which he claimed the other sustained toward him.

A written agreement dated April 18, 1921, was made between George E. McCumber and plaintiff, reciting that McCumber had conveyed to plaintiff by warranty deed, in consideration of $18,000, the Missouri land, subject to the $15,000; that McCumber should possess and operate the land, and not suffer waste to buildings, etc. McCumber agreed to pay the

taxes on the land for 1921, and all fire insurance premiums during the year. It was provided that, on payment of $6,000 on or before March 1, 1922, plaintiff should reconvey, with interest on the mortgage up to March 1, 1922, fully paid. If the $6,000 was not paid, then plaintiff agreed to surrender the land March 1, 1922.

The $6,000, according to all parties, was made up of the following items: $3,750 installment of principal and interest due on the mortgage; $225 interest for one year on the $3,750; $600 interest on the balance of the $12,000 mortgage for one year; $1,425 rent for one year. Defendant and his son Harve thought about $2,000 of the $6,000 was bonus, or the amount to be paid for the privilege of redeeming.

There was no written agreement to repay any of plaintiff's advances. Harve testifies:

"Q. And in consideration of him paying the $3,750, you agreed to pay back $6,000. Is that correct? A. Yes, sir. * * * If we paid $6,000 on the first day of March, they were supposed to deed the farm back to us. * * * Q. Now, as I understand it, at that time you had already deeded them the farm, as a mortgage or security for that loan. (Objected to as leading, etc.) A. Yes, sir."

On cross-examination, he says:

"They had the deed to the farm. Q. Is it their farm—was it their farm? A. It was, I guess. * * * Q. Then why shouldn't you pay rent, $1,425, on the place, if it was their place? * * * A. Because, when they took this farm, we was to pay them $6,000 on the first day of March, and they had been making a good rate of interest."

Shortly before the expiration of the original contract, George McCumber asked for a renewal. On March 1, 1922, another contract was made, extending the former one to January 15, 1923, on condition that defendant should give his note, dated March 1, 1922, due January 15, 1923, for $4,038.96, and a mortgage on defendant's 312 acres in Appanoose County. The contract provided that the amount of the note "is in no wise a penal sum, but a valid, admitted and existing consideration for which the time aforesaid is extended and the sum of $1,238.96 is hereby acknowledged by the said George E. McCumber."

By the writing the plaintiff agreed that, when defendant had paid $6,000 on the original contract, he would credit $2,000 on the $4,038.96 note; when the interest on the $12,000 due March 1, 1923, was paid, the note would be credited with $600; and when defendant should produce tax receipt for 1922, plaintiff would credit $200 on the note. It was stipulated that, on failure to comply with the provisions of the contract, the defendant McCumber and son should surrender the premises to plaintiff, January 15, 1923, which provision of the contract was declared to be of the essence, and the breaking of any provision would work a forfeiture.

The note was given, dated March 1, 1922, due January 15, 1923, for $4,038.96 and 8 per cent interest. The mortgage, with receivership and the other usual clauses, was likewise executed. The defeasance clause called for $4,910.77 on January 15, 1923, with interest at 8 per cent. The difference between the note and mortgage is made up of a note held by the intervener, Vaught, for $871.81, payable to plaintiff, but given for an indebtedness to Vaught. In an amendment to the petition, plaintiff alleges that Vaught has no right in the mortgage security on account of his note, because Vaught took an assignment of it without recourse. The $4,038.96 note, according to plaintiff, was made up of the following items: Cash advanced to Harve to buy hogs, $500, amount paid for taxes on the Missouri farm for 1921, which the first contract required McCumber to pay, $202.96; interest on the $6,000 and on the taxes and on the $500, $536. The $536, the $500 for hogs, and the $202.96 taxes, make $1,238.96. Tansil testified:

"The first item in that was $2,000. Q. What was that for? A. It was to be considered as rent and the right to sell the farm. Q. How much of it was rent,—that $2,000? A. $1,425 we figured as rent. * * * Then the difference between the 1425—$1,425, was that, or a part of it at least, for the right to redeem and resell for another year? A. Yes, sir,—privilege of redeeming or reselling, which at any time we would make a deed."

He says that $600 was put in for interest due March 1, 1923, on the $12,000 mortgage up to March 1, 1923. $200 was for the taxes for 1922. Tansil says:

"We agreed with Mr. McCumber, if he would fulfill his

original contract, that we would credit this $4,038.96 note with the $2,000 which we had—had agreed upon as rent and the right to sell. * * * They wanted us to take a mortgage in the first place. Q. Yes. A. And we refused to take it, and went into detail about it,—we wouldn't accept anything but a deed. Q. Why? A. For the reason that, if they didn't redeem this farm, we didn't want to be out the expense of foreclosure. Q. And was the mortgages of the size of $12,000 and $15,000,—the cost, —expensive, more or less? A. Well, there is some cost and delay in them; requires advertising and going through the manner of sale, service, and things of that sort.''

It is clear that the thought and purpose of the plaintiff, in demanding a deed instead of a mortgage, was to save the expense and delay of foreclosure. There is no claim that any price was put upon the land to plaintiff, or that he had any purpose of buying the land, or defendant had any purpose of selling it to him, or that plaintiff wanted to buy. The witness Mc-Donough testified that Tansil said that the $2,000 was a bonus. Tansil denied this statement.

It will be noticed that by the first contract the plaintiff was exacting a year's interest on the $3,750 that he was advancing, and interest on the balance of the incumbrance, and was exacting payment of taxes and insurance premiums, exacting one year's interest for the use of the money from April 18th to March 1st, and payment of all interest, taxes, and insurance premiums, and besides that, $1,425 rent. He was getting full rent and full interest. It will be noticed that the $6,000, payment of which would have entitled McCumber to a conveyance at the end of the first year, and payment of which was not expressly covenanted for in the writing, includes the rent, so-called, for the first year, and includes interest on the $12,000 balance of the loan for the first year, and includes $225 for interest on the $3,750 advanced; and that, by the agreement for the last year, he was not only put under a covenant to pay interest on all of these items making up the $6,000, but was required to mortgage his Iowa farm, to secure the interest, as well as the interest on the loan and the $1,425 rent and the $575 for the so-called right to sell. McCumber was, therefore, treated by plaintiff as a debtor, asked to pay interest upon the entire

amount which plaintiff had advanced or could be required to advance, and to pay rent upon the land and interest on the mortgage interest and interest on the rent and on the additional $575. Plaintiff was not only getting interest on all of his money invested, or that could be invested, but he was demanding $5.00 per acre net for the land for the first year, though he brings in witnesses to testify that the land was worth, in 1922 and 1923, only $45 to $50 per acre. The $575 was for the right to sell the farm, which was not worth, according to the evidence which he asks the court to accept, the amount of the original incumbrance of $15,000.

In the second contract he includes interest on the entire $6,000 stipulated for in the first contract, which includes, as above noted, $1,425 for rent. According to the plaintiff's evidence, defendant McCumber made claim against him for the $3,000 difference between the $15,000 incumbrance and the $18,000 named in the first contract, and they settled by offsetting the rent and plaintiff's claim for timber taken off the place against the $3,000.

Notwithstanding this relinquishment of the $1,425, the plaintiff included in the note the interest on this item for the ensuing year. In computing interest, though the first contract was dated April 18, 1921, and expired March 1st following, and the second contract is dated March 1, 1922, and expired January 15th following, a full year's interest, at 8 per cent in each instance, was computed for an actual period of 10½ months.

The defendants were required to pay, besides interest on every sum invested, everything that would be required to be paid by defendant as owner. The interest on the mortgage loan was included in the contract sums to be paid. Plaintiff testifies:

"We were not anxious for his loan. * * * Q. What did he say, if he sold this farm over at Moravia, as to whether or not they would necessarily pay your mortgage? A. He said if he sold this farm over in Moravia he would square up. Q. Well, was he going to pay? A. Pay everything. Q. Well, was he going to pay all your mortgage—that is, your $4,038.96? A. He was going to pay it in accordance with the contract."

Gooding testifies:

"We told them we would only furnish this money one way,

and that was to have a deed for the farm. We said mortgage would be too much expense. * * * Wouldn't have invested our money, wouldn't have gone into it, if he had failed and refused to make good to us the $3,750 which we paid. He agreed to all the various items before we consented to go into the deal. For a year he had exclusive option of buying the farm back. * * * McCumber agreed to pay $6,000 by the contract. Never paid it. We did all transactions with reference to securing this deed and contract, in good faith. * * * We didn't go into this contract to get the farm. * * * Think it was sometime in April, 1921, I learned that George was about down and out, and on brink of ruin.''

Plaintiff and Gooding make it plain that they considered the transaction as a loan that McCumber agreed to pay; that they were not purchasers of the Missouri farm. Gooding makes it plain, also, that, according to their information, George McCumber, at the time they were taking these contracts, was financially distressed. Haynes, who drew the first contract and brought it to Iowa to be executed, said that Harve was to pay him $75 and expenses ''if we secured the loan and got it through all right.''

Plaintiff presses upon our attention the terms of the written contracts; the defendant's statements ''as to whether the deed was absolute or deed subject to redemption, we could figure it either way;'' that defendant read over the contracts, was fully informed as to what was in them, and understood the $4,038.96 note and how it was composed.

The plaintiff assumed both the attitude of a money loaner, entitled to interest, and a landowner, entitled to rent. Without further protracting the opinion on this branch of the case, we conclude that the design of the plaintiff and his associate, Gooding, and the purpose of the contracts in question, were to evade the right of a mortgagor to a foreclosure, and to enable the plaintiff and Gooding to realize, for the use of their money, without violating the letter of the usury law, returns in excess of the legal rates.

The case is the typical one of a debtor in distress, applying to a money lender for assistance, and accepting assistance upon the money lender's terms, with a full understanding of what

those terms are. The McCumbers gave up the Missouri land January 15, 1923, according to contract, the day they agreed on. George McCumber says:

"Q. Did you ever have in mind that this contract on the Iowa farm, with the note for $4,038.96, was a valid and binding obligation on you unless you kept the Missouri land? A. Why, no. I never figured they was going to get both farms, or I wouldn't have signed it."

The testimony of defendant's witnesses places a value on the Missouri land of $80 to $100 per acre, in 1920 to 1923. The McCumbers thought they had an equity in the land, and were very desirous to save it. While plaintiff's witnesses testified that the land was worth $60 an acre in March, 1921, and $45 to $50 afterwards, plaintiff claims that the cash rental value in 1921 and 1922 was about $5.00 per acre or more,—one witness says, $4.50 to $5.00. Considering all of the circumstances, the deflation, and the evidence on the character of the land and the rental value, we think that, during the period in question, the property was worth not less than $20,000.

Vaught, Harve McCumber, and George E. McCumber (the latter not consistently) testified that, after the note and mortgage were made, Gooding (George thinks it was Tansil) agreed that, if Tansil got back the farm according to the second contract, the $4,038.96 note and mortgage would be canceled. This is denied by Tansil and Gooding. It is not reasonable to suppose that McCumber intended to give up the property altogether and pay plaintiff $3,500 in addition, mortgaging his Iowa farm, which plaintiff says in argument was already mortgaged to about its full value. We think, from the terms of the contracts, and from what was said at the time the second contract was made, that the defendant believed that the turning back of the land would result in the cancellation of all of the plaintiff's claims against George McCumber for moneys advanced on account of the Missouri land. The land was turned back on the expiration of the second contract, and there is no evidence of any express agreement as to the terms on which it was to be turned back, other than that furnished by the written contracts and the defendants' evidence just referred to. It is not necessary to discuss the question of whether the claim for the $500

advanced to Harve to purchase hogs, and the note of $871 in favor of Vaught, were to be thus settled; for judgment has been given for those sums, and no appeal has been taken by Mc-Cumber. The equity of redemption is apparently claimed by plaintiff to have been surrendered to him and relinquished. He has not accounted for its value, or offered to do equity with respect to it.

I. It is true that equity will not relieve from a sale made at a serious reduction from value, made without fraud or deception, to one dealing at arm's length, with whom there were no previous relations of which advantage was taken. *Miles v. Dover F. I. Co.*, 125 N. Y. 294 (26 N. E. 261).

It is also true that mere random statements and speaking of the deed as security and the like are not sufficient to over-come direct and positive proof that the transaction was not intended as a mortgage, where the situation is such that in equity it is not a mortgage. *Bradford v. Helsell*, 150 Iowa 732. The facts, however, taken together, require the conclusion that the real and intended relationship between plaintiff and Gooding, on the one side, and defendant, on the other, with respect to the Missouri land, was that of debtor and creditor; that plaintiff and Gooding did not purchase the Missouri land; that the instrument in the form of a deed to the plaintiff for that land was held as, and was understood to be, security; and that the mortgage now in controversy was given as additional security for part of the same indebtedness.

Plaintiff advanced money at the request of McCumber, for the purpose of paying off an incumbrance upon McCumber's land. The law implied a promise by McCumber to pay back the amount so advanced, with interest; and this established the relationship of debtor and creditor,—as much so as if Tansil had directly loaned the money to McCumber and delivered it to him, and the latter had, in turn, paid it on the mortgage. *Sandlin v. Kearney*, 154 N. C. 596 (70 S. E. 942); *Campbell v. Worthington*, 6 Vt. 448, 454.

"In ascertaining the *original* character of a transaction, it is ever to be borne in mind that no subsequent agreement can alter that character; but it does not therefore follow that we are to examine the original contract only, and shut our eyes to

the subsequent acts and concessions of the parties tending to show what was such original character in its inception.  A question frequently arises whether an absolute deed was not really a security and mortgage, as between the parties.  Resort is always had to the conduct and concessions of the parties, both contemporaneous and *subsequent,* and if anything can be found absolutely inconsistent with its being a sale, it shows it a mortgage.  For instance, if the purchaser takes the vendor's note for the purchase money, or receives part payments or interest on the same.''  *Campbell v. Worthington,* 6 Vt. 448, 454; *Shields v. Simonton,* 65 W. Va. 179 (63 S. E. 972).   ·

When the instrument appears to have been taken as security for a loan, it is immaterial that the lender repeatedly stated that he would not take a mortgage, or that he adopted other means to conceal the truth. *Lunsford v. Colwell,* 199 Ky. 326 (250 S. W. 993).

'' '* * * When the transaction had its inception in an application for a loan, the  courts are inclined to scrutinize it closely, and to hold it a mortgage, unless it clearly appears that the parties changed their minds afterwards.' ''  *Williamson v. Frazee,* 294 Mo. 320 (242 S. W. 958).

The taking of additional security for interest does not release the existing mortgage. *Cherry v. Welsher,* 195 Iowa 640.

That the value of the security is less than the debt, if so, as claimed by plaintiff, does not affect the character of the conveyance as a mortgage. *Lipscomb v. Talbott,* 243 Mo. 1 (147 S. W. 798).  In this case the court quotes from 1 Jones on Mortgages (6th Ed.), Section 340:

''If originally taken as a mortgage, nothing but a subsequent agreement of the parties can change its character, and deprive the mortgagor of his right of redemption; and even such an agreement cannot change its character as to intervening interests.  This right cannot be waived or abandoned by any stipulation. * * * The mortgagor may make a subsequent release of the equity of redemption, but an adequate consideration is necessary to support it.  It must be for a consideration that would be deemed reasonable if the transaction were between other parties.  The transaction must in all respects be fair, with no unconscientious advantage taken by the mortgagee.  Such a

release will not be inferred from equivocal circumstances and loose expressions. It must appear by a writing importing in terms a transfer of the mortgagor's interest, or such facts must be shown as will estop him afterwards to assert any interest.''

*Southwick v. Bigelow,* 237 Mass. 299 (129 N. E. 452), is quite a similar case. The defendant advanced a sum of money, and gave plaintiff an option to repurchase. It was held that what purported to be a sale was not one, in reality, but that the deed and agreement constituted, in equity, a mortgage.

No personal obligation on the part of the mortgagor is necessary to a valid mortgage, though the absence of it is a material circumstance. *Lundeen v. Nyborg,* (Minn.) 201 N. W. 623; *Klingensmith v. Klingensmith,* 193 Iowa 350.

We hold that the plaintiff's interest in the Missouri land under the two contracts was that of mortgagee. *Fort v. Colby,* 165 Iowa 95; *McRobert v. Bridget,* 168 Iowa 28; *McGuire v. Halloran,* 182 Iowa 209; *Osborne v. Osborne,* 196 Iowa 871; *Bilbo v. Ball,* 194 Iowa 875; *Altenbrun v. First Nat. Bank,* 47 N. D. 266 (181 N. W. 590); *Shelp v. Decker* (Tex. Civ. App.), 262 S. W. 807; *Melenky v. Melen,* 206 App. Div. 46 (200 N. Y. Supp. 730).

II. As the deed was in equity a mortgage, the equity of redemption was not cut off by the promissory agreement in the mortgage itself, nor could the defendant, by a stipulation of the defeasance or the original mortgage transaction itself, waive his right to make redemption or to foreclosure by the decree of a competent court. *McGuire v. Halloran,* 182 Iowa 209, 219; *Fort v. Colby,* 165 Iowa 95. The right to have the security foreclosed in the method provided by statute, and the right to the period allowed by law for redemption, are a part of those humane provisions established by law for the protection of improvidents and the unfortunate and their helpless dependents. Such statutes exemplify the public policy of the state, and are in the interest of the community and for the purpose of protecting the public from pauperism.

The pleadings do not allege that the laws of Missouri are different from those of Iowa. The first contract seems to have been signed in Iowa, but whether delivered there or not, is not

2. EVIDENCE:
presumption:
law of sister
state.

clear. The second apparently was made and delivered in Missouri. The plaintiff testified to his understanding that there is no redemption "under such trust deeds or mortgages down there." We are required to presume that the law of Missouri is the same as that of Iowa. *Varner v. Interstate Exchange,* 138 Iowa 201, 204; *Barringer v. Ryder,* 119 Iowa 121; *Condit v. Johnson,* 158 Iowa 209; *Rudolph Hdw. Co. v. Price,* 164 Iowa 353; *Smith & Son v. Bloom,* 159 Iowa 592, 601. There would at least be a period of redemption until the foreclosure proceedings were completed. *Lipscomb v. Talbott,* 243 Mo. 1 (147 S. W. 798).

III. The equity of redemption in the Missouri land was not cut off by either of the written agreements. *Fort v. Colby,* 165 Iowa 95; *McGuire v. Halloran,* 182 Iowa 209, 219. The property, however, was turned over by McCumber to plaintiff January 15, 1923. Plaintiff is claiming it under the agreements of April 18, 1921, and March 1, 1922, which give him no right to it other than as a mortgagee in possession. *Fort v. Colby,* 165 Iowa 95; *McGuire v. Halloran,* 182 Iowa 209. Defendants cannot redeem, except on condition of paying the whole debt actually owed. *White v. Lucas,* 46 Iowa 319; *Calahan v. Dunker,* 51 Ind. App. 436 (99 N. E. 1021). An actual surrender of the equity by parol by the defendants to the plaintiff would vest in him the absolute title. *Baxter v. Pritchard,* 122 Iowa 590. But it must have been fairly made, and upon an adequate consideration. 1 *Jones on Mortgages* (6th Ed.), Section 640, supra; *Klingensmith v. Klingensmith,* 193 Iowa 350; *Gilbert v. Clark & Co.,* 186 Iowa 904. The plaintiff cannot appropriate the equity of redemption and avoid accounting for its value; cannot hold the land and deny to defendant the application of its value on the debt. The actual value of the property would inure to defendant by way of payment. *Harris v. Barnes City Sav. Bank,* 194 Iowa 492; *Gilbert v. Clark & Co.,* 186 Iowa 904; *Briggs v. Richmond,* 10 Pick. (Mass.) 391 (20 Am. Dec. 526, 529); *Lane v. Barron,* 64 N. H. 277 (9 Atl. 544); *Burpee v. Parker,* 24 Vt. 567. A suit to foreclose a mortgage is equitable in its nature, and will not be enforced if unconscionable in character. *Bieber v. Goldberg,* 133 App. Div. 207 (117 N. Y. Supp. 211). Plaintiff is not only appropriating the equity of

redemption without offering to do equity, but "occupies the position of one demanding usury of an unfortunate debtor; and if the alleged settlement is permitted to stand, will obtain an unconscionable advantage over" him. *Gilbert v. Clark & Co.*, 186 Iowa 904.

The case is one for the application of the maxim, "He who seeks equity must do equity." The plaintiff's possession and assertion of title to the Missouri land, worth, as it is, more than the amount of any just claim which he has against the defendant McCumber, are so manifestly unjust as to repel him from the doors of a court of equity. *Miller v. City of Des Moines*, 143 Iowa 409; *Kagy v. Independent Dist.*, 117 Iowa 694.

IV. On this record, the conclusion is irresistible that the plaintiff has taken advantage of the necessities of one who thought he had, and on the evidence did have, a substantial equity in the Missouri land, and was very de-

3. EQUITY: seeking and doing equity: unconscionable mortgage.

sirous of saving it. It appears that plaintiff did not know about McCumber's having the Iowa farm, until the day he took the mortgage. The harsh character of the plaintiff's demands is not mollified by his contention in argument that the Iowa farm, when the last agreement was made, was already mortgaged to about its full value. The record is silent in respect to the usury laws of Missouri. As stated, we must presume them to be the same

4. EVIDENCE: presumption: law of sister state.

as those of Iowa. To sustain these transactions would, in effect, nullify the right of the debtor to the regular process of foreclosure and to redeem his property, and would sanction the evasion and nullification of usury laws. It is clear that the plaintiff has been seeking by various devices, under the guise of rents,—which, if we were to accept his valuations, were excessive in proportion to the value of the property, —and in the guise of consideration for that which, on his contention, was a worthless right to sell property, and by demanding interest on an item the principal of which he admits he released, and by demanding interest for two distinct periods of a year each, when the periods were only 10½ months each, and by demanding computation for monetary advances in the form both of interest and rent, with taxes and expenses, to take advantage of the financial needs and threatened loss of the defendant

McCumber. It is apparent that to sustain this form of evasion would lead and permit a creditor to pursue the last half acre which the law allows to a debtor for the shelter of himself and family, and to pursue and subject the provisions which the law reserves for the support of his dependents.

It is the old story in a new form. The friend or the son sees a desirable investment in a wife or a farm. The argosies will surely come in a month before the bond is due. The bond is a "merry sport." But the argosies are wrecked, the golden dreams vanish, the creditor will have his bond. Equity, however, is called into activity only in case of conscience, and will not grant the usurious creditor foreclosure. *Kuhner v. Butler,* 11 Iowa 419; 2 *Pomeroy's Equity Jurisprudence* (4th Ed.), Section 937; *Fanning v. Dunham,* 5 Johns. Ch. (N. Y.) 122 (9 Am. Dec. 283); *Larscheid v. Kittell,* 142 Wis. 172 (125 N. W. 442); *Erie R. Co. v. Delaware L. & W. R. Co.,* 21 N. J. Eq. 283; *Stanford v. Stanford,* 87 N. J. Eq. 475 (101 Atl. 388).

"It was against the consequences of this over-confidence, and the readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort, that the legislature has undertaken to interpose. * * * The law was designed to protect him against his own improvidence in giving such consent. The statutes contain many examples of legislation based upon the same motives. The laws against usury, those which forbid imprisonment for debt, and those which allow a redemption after the sale of land on execution, are of this class. So of the principle originally introduced by courts of equity, and which has been long established in all courts, to the effect that, if one convey land as security for a debt, and agree that his deed shall become absolute if payment is not made by the day, he shall still be entitled to redeem, on paying the debt and interest. * * * In these cases, the law seeks to mitigate the consequence of men's thoughtlessness and improvidence; and it does not, I think, allow its policy to be evaded by any language which may be inserted in the contract." *Kneettle v. Newcomb,* 22 N. Y. 249.

"To stay the arm of a court of equity from enforcing a contract, it is by no means necessary to prove that it is invalid; from time to time immemorial it has been the recognized duty of

such courts to exercise a discretion; to refuse their aid in the enforcement of unconscionable, oppressive, or iniquitous contracts; and to turn the party claiming the benefit of such contract over to a court of law. This distinction was recognized by this court in *Cathcart v. Robinson*, 5 Pet. 264, 276, wherein Chief Justice Marshall says: 'The difference between that degree of unfairness which will induce a court of equity to interfere actively by setting aside a contract, and that which will induce a court to withhold its aid, is well settled. *Mortlock v. Buller*, 10 Ves. Jr. 292; *Day v. Newman*, 2 Cox's Eq. Cas. 77. It is said that the plaintiff must come into court with clean hands, and that a defendant may resist a bill for specific performance by showing that under the circumstances the plaintiff is not entitled to the relief he asks. Omission or mistake in the agreement, or that it is unconscientious or unreasonable, or that there has been concealment, misrepresentation, or any unfairness, are enumerated among the causes which will induce the court to refuse its aid.' " *Pope Mfg. Co. v. Gormully*, 144 U. S. 224.

And see *Hennessy v. Woolworth*, 128 U. S. 438, 442 (32 L. Ed. 500); *Nickerson v. Nickerson*, 127 U. S. 668 (32 L. Ed. 314); *Haffner v. Dobrinski*, 215 U. S. 446; *Interstate Sav. & Loan Assn. v. Badgley*, 115 Fed. 390; *Stotesbury v. Huber*, 237 Fed. 413, 425.

V. Plaintiff objects that usury is not pleaded. In the view that we take of the case, it is not necessary to consider the contracts from the technical standpoint of their being usurious. The answer is indefinite in its allegations, and does not set up usury as such. The answer does plead absence and failure of consideration and, very generally, it is true, that the plaintiff's claim is so unconscionable and inequitable that the suit should be dismissed. No objection on account of the indefiniteness of the pleadings or application for more specific statement was made. *Johnson v. Carter*, 143 Iowa 95.

5. EQUITY: unconscionable action: pleadings: waiver.

The plaintiff is the actor, and is seeking to enlist the aid of a court of equity in a case which does not appeal to conscience. The case has been as fully tried by both parties as if all the matters now being considered were properly pleaded. The facts

before the court are such that the relief asked for would be inequitable. *Johnson v. Carter*, 143 Iowa 95. The items constituting the plaintiff's claim, and their inequitable character, appear from the plaintiff's own evidence. The court cannot ignore the facts before it and appearing from the plaintiff's case, and give the plaintiff illegal compensation for the use of his money simply because usury is not pleaded. The excessive and illegal charges are elements in the unconscionableness of the claim. Code of 1897, Section 3040; *Phelps v. Pierson*, 1 G. Greene 121; *Morgan v. Wickliffe*, 110 Ky. 215 (61 S. W. 13). Chief Justice Ryan, in *Wight v. Rindskopf*, 43 Wis. 344, 348, says:

"[The cases cited] do not hold—we know of no case which does—that, when a contract is in terms *contra bonos mores*, it is necessary for the defendant to plead the objection; or that a court will proceed to judgment upon it, both parties even assenting. If the objection be not made by the party charged, it is the duty of the court to make it on its own behalf. Courts owe it to public justice and to their own integrity to refuse to become parties to contracts essentially violating morality or public policy, by entertaining actions upon them. It is judicial duty always to turn a suitor upon such a contract out of court, whenever and however the character of the contract is made to appear. In the present case, the nature of the contract does not appear either in the complaint or in the answer. The pleadings of both parties appear to acquiesce in its validity. But if the contract, as proved, be essentially against public policy, it was the duty of the court below promptly to exclude it, and all evidence under it, from the consideration of the jury. The acquiescence of the defendant could not purge it, or afford excuse to the court to enforce it. And the question here is, the nature of the contract itself."

The court gave plaintiff judgment for $500 advanced to Harve for the purchase of hogs, without interest, but gave judgment against the defendant in favor of the school district for the interest. The suit is upon the note and mortgage, and not for money advanced. Whether or not the plaintiff is entitled to a separate recovery of that item, on the contract sued upon,

6. USURY: rights and remedies: nonusurious item of indebtedness.

is not before us, as a recovery has been allowed, and no appeal taken by McCumber. In effect, the $500 has been separated from the rest of the contract. It is inconsistent, we think, to allow a recovery for the $500 principal as a separate item, and not allow a recovery for interest, which is an incident to the principal. There was no agreement to pay illegal interest upon that item. The plaintiff should have interest upon the $500 at 6 per cent, and the decree is modified accordingly. The judgment in favor of the school fund should be eliminated.

VI. Plaintiff claims that, as the land was situated in Missouri, the court has no jurisdiction to declare the deed to be a mortgage. The court does have jurisdiction of both parties to the controversy, and to determine what their contract relations were. As previously stated, the laws of Missouri are presumed to be the same as those of Iowa. All costs will be taxed to plaintiff.— *Modified and affirmed.*

7. COURTS: jurisdiction: lands in foreign state.

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.

VERMILION, J., takes no part.